**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

LIZNELIA BAEZ, on behalf of herself
and all others similarly situated,

       Plaintiff,

v.                                    Case No:  6:15-cv-1043-Orl-40TBS

LTD FINANCIAL SERVICES, L.P.,

       Defendant.

_____

## <u>ORDER</u>

This cause comes before the Court on the following:

1.  Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law (Doc. 21), filed November 20, 2015;

2.  Defendant's Response in Opposition to Plaintiff's Motion for Class Certification (Doc. 24), filed December 17, 2015;

3.  Plaintiff's Proposal for Class Notice (Doc. 30), filed May 9, 2016; and

4.  Defendant's Response to Plaintiff's Proposal for Class Notice (Doc. 34), filed May 18, 2016.

Upon consideration, Plaintiff's Motion for Class Certification will be granted in part and denied in part.

## I.  BACKGROUND

Plaintiff, Liznelia Baez ("Baez"), initiated this putative class action against Defendant, LTD Financial Services, L.P. ("LTD"), to vindicate her rights and the rights of other similarly situated consumers under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p.  Baez states that she and approximately 34,000

other consumers received dunning letters from LTD which sought partial payment on debts that are barred by the applicable statute of limitations.   Baez claims that these dunning letters violated the FDCPA by failing to disclose that a partial payment made on a time-barred debt would "revive" the debt under Florida law, thus subjecting the consumer to liability anew.   Baez concludes that this failure misrepresents the true character and legal status of the debts LTD sought to collect and otherwise constitutes misleading and unfair means to collect or attempt to collect a debt.

Baez now moves to certify a class consisting of all consumers within the State of Florida who received LTD's dunning letter.   Baez also moves to certify a subclass consisting of those class members who actually paid on a time-barred debt because of LTD's dunning letter, thus reviving the stale debt under Florida law.   LTD has responded and this matter is ripe for review.

## II.   STANDARD OF REVIEW

To certify a class action, the moving party must satisfy a number of prerequisites. First, the named plaintiff must demonstrate standing.   *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).   Second, the putative class must meet all four requirements enumerated in Federal Rule of Civil Procedure 23(a).   *Id.*   Those four requirements are "numerosity, commonality, typicality, and adequacy of representation." *Id.* (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003)).   Third, the putative class must fit into at least one of the three class types defined by Rule 23(b).   *Id.*   Relevant to this case, Rule 23(b)(3) permits certification of a class where (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method for resolving these

common questions.  *Id.*  A party moving for certification of a Rule 23(b)(3) class in this Court also faces the added hurdle of proposing a cost-effective means of providing notice to putative class members.  M.D. Fla. R. 4.04(b).

To certify a subclass within a class action, the moving party must show that the proposed subclass independently satisfies the same prerequisites for certifying a class: standing, numerosity, commonality, typicality, adequacy of representation, and that the subclass falls into at least one of Rule 23(b)'s three class types.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002).  The party moving to certify any class or subclass ultimately bears the burden of proving that all prerequisites are met.  *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2015).

## III.   DISCUSSION

### A.   The Proposed Class

Baez seeks to certify the following class:

> All persons in the state of Florida who were sent a collection letter from LTD containing an out of statute statement substantially similar to the Settlement Offer Letter attached to the Complaint as Exhibit A.

(Doc. 21, p. 2).  Upon review of the requirements for class certification, the Court will certify the class.

### 1.   Standing

A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).  To establish standing, the plaintiff bears the burden of demonstrating that she suffered an actual injury, a causal connection exists between this injury and the

defendant's conduct, and her injury is likely to be redressed by a favorable decision. *Harrell v. Fla. Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010).  Prior to summary judgment, these elements are not particularly onerous and will be satisfied by "general factual allegations of injury resulting from the defendant's conduct."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In her Complaint, Baez alleges that she received a dunning letter from LTD which asked her to make a partial payment on a defaulted consumer debt for which the statute of limitations had passed.  However, the dunning letter did not disclose that making a partial payment would revive the debt under Florida law, thus subjecting her to legal action to enforce the full amount of the debt.  Baez claims that LTD's failure to disclose constitutes a false, misleading, and unfair debt collection practice, thus violating her FDCPA rights.  An award of statutory damages under the FDCPA would remedy LTD's alleged violation of Baez's rights.  Accordingly, Baez sufficiently demonstrates her standing to bring and maintain her FDCPA claims.

### 2.    Numerosity

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The general rule is that more than forty members is sufficient to demonstrate that joinder is impracticable.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).  While the party seeking certification need not identify the exact number of members in the proposed class, she cannot rest on "mere allegations of numerosity." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  Rather, the movant must provide the court with sufficient proof to support a reasoned

finding that the certified class would meet the numerosity requirement.  *Vega*, 564 F.3d at 1267.

Here, Baez asserts that approximately 34,000 consumers in Florida received LTD's allegedly deceptive dunning letter.  In support of that number, Baez points to the deposition testimony of LTD's corporate representative, Jim Glaus, who testified that he ran a query of LTD's databases and determined that LTD sent about 34,000 of the dunning letters to consumers located in Florida.  LTD also provides the Court with a declaration from its Executive Vice President, David John, who states that LTD estimates that 34,717 Florida consumers received the disputed dunning letter.  The numerosity requirement is therefore easily satisfied.

### 3.    Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This prerequisite does not demand that all questions of law or fact be common among the class members, only that all members base their claims on a common contention that is "capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  One common question of law or fact is sufficient so long as answering the question is central to determining the validity of all of the class members' claims and will aid in the resolution of the case.  *Id.* at 359.

Here, Baez contends that this lawsuit involves a number of common questions, one such question being whether LTD's dunning letter constitutes a false or misleading debt collection practice by failing to disclose the effect of a consumer's partial payment on a time-barred debt.  Baez shows that all putative class members received the exact same dunning letter from LTD.  As a result, answering this question would aid in the

resolution of LTD's liability under the FDCPA with regard to the entire class. The commonality requirement is therefore easily satisfied as well.

### 4.   Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This element of certification "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)), *cert. denied*, 528 U.S. 1159 (2000). The named plaintiff's claims do not need to be identical to the claims of the absent class members, but they should "share the same essential characteristics" such that it would make sense for the plaintiff to act as the class's representative. *Haggart v. United States*, 89 Fed. Cl. 523, 534 (Fed. Cl. 2009) (quoting *Curry v. United States*, 81 Fed. Cl. 328, 335 (Fed. Cl. 2008)).

Here, Baez demonstrates that she, like all other putative class members, received a dunning letter from LTD which requested partial payment of a time-barred debt, but failed to inform her that a partial payment would revive the debt under Florida law. Baez consequently shares the same legal and remedial theories as the class and it would make sense for her to act as the class's representative. Typicality is therefore satisfied.

### 5.   Adequacy of Representation

Adequacy of representation requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation refers both to the named plaintiff who intends to represent the absent class

members and to the lawyers who intend to serve as class counsel.  *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).  Regarding the latter, class counsel will adequately represent the class if they are "qualified, experienced, and generally able to conduct the proposed litigation."  *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).  This requires the court to evaluate a number of factors, including counsel's knowledge and experience with class action litigation, counsel's knowledge and experience with the substantive law governing the class's claims, the resources available to counsel to pursue the class's claims, the quality of counsel's litigation efforts so far, and any other relevant factor speaking to counsel's ability to represent the class's legal interests.  *See* 1 NEWBERG ON CLASS ACTIONS §§ 3:73–3:79 (5th ed. 2011).

    Baez has produced a sworn declaration from one of her attorneys, Janet R. Varnell, who describes her qualifications and experience to act as class counsel.  Ms. Varnell has been a member in good standing with the Florida Bar for twenty years and is admitted to practice in this Court.  Over the past fourteen years, Ms. Varnell's practice has focused primarily on consumer class action litigation involving predatory lending, unfair debt collection practices, and deceptive trade practices.  Ms. Varnell has delivered more than fifty professional presentations on consumer protection law and class action litigation and she has received recognition throughout her career for her work.  Ms. Varnell and her law firm have been named as class counsel in more than twenty-five consumer class actions.  Although LTD wishes to portray Baez's counsel as inadequate due to their failure to comply with this Court's Local Rules on one occasion, counsel has since remedied that deficiency.  The Court is also unpersuaded by LTD's assertion that counsel is inadequate because they have failed to correct certain misstatements apparently made

in the Complaint.   The Court therefore finds counsel to be adequately qualified, experienced, and capable to act as class counsel in this case.

As to the adequacy of the proposed class representative, a named plaintiff will be adequate as long as (1) she is qualified, and (2) she has no substantial conflict of interest with the class.  *Valley Drug*, 350 F.3d at 1189.  A named plaintiff is qualified if she holds a basic understanding of the facts and legal theories underpinning the lawsuit and is willing to shoulder the burden of litigating on the class's behalf.  *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).  At the certification stage, inquiry into a proposed representative's qualifications is not especially stringent. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (stating that certification should only be denied for inadequate representation where the plaintiff's lack of knowledge and involvement with the case essentially amounts to abdication of her role in the case), *cert. denied*, 485 U.S. 959 (1988).  A named plaintiff will have a substantial conflict of interest which precludes her from acting as class representative when her interests are so antagonistic to the interests of the absent class members that she cannot fairly pursue the litigation on their behalf.  *See Griffin*, 755 F.2d at 1533; *Carriuolo v. Gen. Motors Co.*, No. 15-14442, 2016 WL 2870025, at *8 (11th Cir. May 17, 2016).

LTD contends that Baez fails to carry her burden of demonstrating that she would be an appropriate class representative.  LTD takes issue with Baez's failure to specifically describe her readiness to pursue this litigation and her conclusory assertion that she has no conflict of interest with the class.  The Court is not inclined to deny certification on these grounds.  Upon realizing the potential violation of her FDCPA rights by LTD, Baez quickly sought out and retained counsel who is experienced in consumer protection law

and aggregate litigation.  The Court can reasonably infer that this required research and preparation, both on the facts and legal posture of the circumstances giving rise to this lawsuit and on who to retain as counsel.  Additionally, the Court finds no potential conflict of interest between Baez and the class.  Based on the allegations of the Complaint and her description of the case in her certification motion, Baez allegedly suffered the same injuries and seeks the same relief as the rest of the class.  The Court therefore concludes that Baez would make an adequate class representative.

### 6.   Predominance and Superiority

In addition to demonstrating standing and satisfying Rule 23(a)'s four prerequisites, a plaintiff must show that the putative class she wishes to certify falls into at least one of Rule 23(b)'s three class types. In this case, Baez moves to certify the class under Rule 23(b)(3).  This rule affords class status where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These two elements are referred to as "predominance" and "superiority," respectively, and the Court discusses them in turn.

### a.   Predominance

Predominance refers to the class's cohesion as a whole and examines whether adjudication of members' individual interests on a classwide basis would be appropriate. *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In determining predominance, the district court assesses the issues of law and fact likely to arise during the litigation and weighs whether issues common to the class predominate over issues which are

unique to each individual class member.  *Id.* at 622–23 & n.18.  Ultimately, predominance revolves around the quality, rather than the quantity, of the class members' shared interests.  *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 272 (4th Cir. 2010).  Where the litigation is defined by individualized inquiries regarding the defendant's possible liability to each class member, predominance is lacking and certification should be denied. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010).  However, where the class members seek answers to the same questions and those answers would "have a direct impact on every class member's effort to establish liability," common issues predominate and certification should be granted.  *Id.* (quoting *Vega*, 564 F.3d at 1270) (internal quotation marks and emphasis omitted).

LTD disputes whether the issues common to the class predominate over each member's individual issues.  Because Baez's theory of liability is that LTD's dunning letter violates the FDCPA by failing to disclose the effect of tendering a partial payment on a time-barred debt, LTD contends that two individualized inquiries will need to be made in order to determine LTD's liability, if any, to each class member.  First, LTD states that the Court will need to ascertain whether each class member's debt was time-barred such that LTD's alleged failure would actually violate that particular class member's FDCPA rights. However, LTD's argument appears to be defeated by the dunning letter itself, which informs each recipient, "The law limits how long you can be sued on a debt.  Because of the age of this account, you will not be sued for the debt." (Doc. 1-1).  The dunning letter therefore acknowledges—although not in legal terms—that each putative class member's debt was time-barred at the time the letter was mailed.  An individualized analysis regarding whether each recipient's debt was time-barred is therefore unnecessary.

LTD also argues that the Court will need to determine the purpose of each class member's debt, as the FDCPA only applies to collection activities involving consumer debts incurred for personal, family, or household purposes, *see* 15 U.S.C. § 1692a(5). LTD contends that it collects on both business and consumer accounts and that it will be necessary to inquire of each class member which type of debt he or she incurred so as to be covered by the FDCPA.  However, LTD's Executive Vice President, David John, testified at deposition that the creditor who assigns an account to LTD for collection "typically" designates whether the debt incurred was for business or consumer purposes. (Doc. 21-2, 35:12–24).  Mr. John also states by declaration that LTD has identified all 34,000+ individuals who received the dunning letter.  (Doc. 24-1, ¶ 18).  Notwithstanding, LTD has not come forward with any information tending to indicate that any of these accounts were for non-consumer debts.  It therefore seems that LTD's concern is more hypothetical than genuine.

Indeed, the Court finds that the issues of fact and law common to the class predominate in this case.  All members experienced the same factual circumstances which caused this lawsuit: they all received the same dunning letter from LTD seeking partial payment on a time-barred debt without disclosing the legal consequences of such a partial payment.  All members will want to know the answer to the legal question of whether LTD's nondisclosure violates their statutory rights under the FDCPA to be free from false, misleading, and unfair debt collection practices.  Because of the uniform and standardized nature of the facts in this case, the evidence necessary for each class member to impose liability on LTD will undoubtedly be the same.  As a result, the Court

finds that Baez has satisfied the predominance element for certifying a Rule 23(b)(3) class.

### b.    Superiority

Superiority refers to whether the class action mechanism "would be the best or the fairest way" to resolve the parties' dispute when compared to available alternatives. *Ungar v. Dunkin' Donuts of Am., Inc.*, 68 F.R.D. 65, 148 (E.D. Pa. 1975), *rev'd on other grounds*, 531 F.2d 1211 (3d Cir. 1976), *cert. denied*, 429 U.S. 823 (1976). Determining superiority requires the court to evaluate the four factors enumerated by Rule 23(b)(3). *See Vega*, 564 F.3d at 1278. These four factors are: (1) the class members' interests in individually controlling the prosecution of their own claims, (2) the extent and nature of litigation already initiated by individual class members, (3) the desirability of concentrating litigation in a single forum, and (4) whether there will be difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Court finds that this case is particularly well-suited to being resolved via class action. No party has advised the Court of other litigation initiated by absent class members. Moreover, the vast majority of the individual members would likely never assert their FDCPA rights against LTD absent this litigation. *See Anchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). There therefore appears to be no real risk of compromising members' individual interests in pursuing their own actions. Further, requiring the some 34,000 putative class members to pursue their own individual law suits would work an

enormous burden on the federal judicial system; centralizing their claims in one forum would obviously prevent that burden and result in the efficient adjudication of the parties' rights.  Finally, the Court sees no management issues which should prevent this case from proceeding as a class action.  Baez accordingly satisfies Rule 23(b)(3)'s superiority requirement as well.

### 7.    Providing and Defraying the Cost of Notice

Lastly, this Court's Local Rules require a party moving to certify a Rule 23(b)(3) class to "suggest a means of providing, and defraying the cost of" notice to the class. M.D. Fla. R. 4.04(b).  Baez suggests a plan which consists of myriad methods for providing notice, such as notice by U.S. mail, setting up a toll-free interactive voice response telephone number, and establishing a dedicated website and Facebook page. All of these means of notice are generally acceptable.  *See* MANUAL FOR COMPLEX LITIGATION § 21.31 & n.881 (4th ed. 2004).  In terms of defraying the cost of notice, Baez proposes utilizing the above-mentioned telephone number, website, and Facebook page in conjunction with a postcard-type mail notice.  Baez estimates that utilizing postcards in this multimedia approach in lieu of long-form letters sent by first class mail will save about $12,000 in notification costs.  The Court is satisfied that Baez has sufficiently contemplated and investigated how to best provide notice to the approximately 34,000 class members in this case.

### B.    The Proposed Subclass

Baez additionally seeks to certify the following "Actual Damages Sub-Class":

> Any member of the Class who paid money to Defendant after Defendant sent a Settlement Offer Letter with an out-of-statute statement.

(Doc. 21, p. 3).  Upon review of the elements required for class certification, however, the Court finds certification of the proposed subclass inappropriate.  It is axiomatic that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Dukes*, 564 U.S. at 348–49 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  Baez does not contend in either her motion for certification or her Complaint that she paid money to LTD because of LTD's dunning letter.  As a result, Baez's injuries are not typical of the injuries allegedly suffered by the proposed subclass and she cannot fairly and adequately represent the subclass's interests.  Because no other representative has been identified for the subclass, the Court finds that the subclass suffers at least from lack of typicality and inadequate representation, and, as a result, should not be certified.[1]

### C.    Class Counsel

Upon concluding that class certification is appropriate, the court must appoint class counsel to pursue the litigation on the class's behalf.  Fed. R. Civ. P. 23(g)(1).  The court is required to appoint counsel who will "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  In examining the adequacy of a proposed class counsel, the court must consider counsel's work so far in the case, counsel's experience in litigating class actions, counsel's knowledge of the applicable law, and the resources available to counsel to pursue the litigation on the class's behalf.  Fed. R. Civ. P. 23(g)(1)(A).

---

[1]    The Court additionally notes that Baez's motion makes no attempt to explain how the proposed subclass satisfies the commonality or the predominance and superiority requirements.  Denial of subclass certification is warranted on these grounds as well.

Varnell & Warwick, P.A. seeks to represent the class in this case.  As described in more detail in Section III.A.5, *supra*, Ms. Varnell has extensive experience and knowledge in handling consumer protection class actions and has served as class counsel in numerous lawsuits.  Ms. Varnell and her law firm further represent that they can commit the resources necessary to fairly and zealously pursue this litigation, and the Court finds that they have done as much so far in this case.  The Court will therefore appoint Varnell & Warwick, P.A. as class counsel.

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Class Certification (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Plaintiff's motion to certify the class is **GRANTED**. The following class is **CERTIFIED**:

        All persons in the state of Florida who were sent a collection letter from LTD containing an out of statute statement substantially similar to the Settlement Offer Letter attached to the Complaint as Exhibit A.

    b. Plaintiff's motion to certify the subclass is **DENIED**.

2. The Court appoints Plaintiff, Liznelia Baez, as lead Plaintiff and Class Representative.

3. The Court appoints Varnell & Warwick, P.A. as lead Class Counsel.

4. On or before **June 17, 2016**, if Defendant has not already done so, Defendant shall produce to Plaintiff the names and last known addresses of all individuals who comprise the Class.

5.  The parties shall confer and, to the extent possible, agree on the form of notice to be mailed to the Class.  On or before **July 1, 2016**, the parties shall jointly file their proposed form of notice for the Court's review.  For any disputes regarding the proposed notice that cannot be resolved between the parties, the proposed notice submitted to the Court shall reflect Plaintiff's choice of wording in yellow highlighted text.  The parties may then explain their positions in a joint memorandum included with the proposed notice.

**DONE AND ORDERED** in Orlando, Florida on June 8, 2016.


_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record