# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LIZNELIA BAEZ, on behalf of herself
and all others similarly situated,**

**Plaintiff,**

**Case No.: 6:15-cv-1043-Orl-40TBS**

**v.**

**LTD FINANCIAL SERVICES, L.P.,
a Texas Corporation,**

**Defendant.**

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR ATTORNEY FEES AND COSTS

The FDCPA provides that reasonable attorneys' fees and other litigation costs may be awarded in any "successful action."  Because the jury determined that Defendant, LTD Financial Services Inc. ("LTD") violated three separate sections of the FDCPA, 1692(e)(2), 1692(e)(10), and 1692(f), and awarded the statutory maximum to Plaintiff and the class.  As a result, this case must be considered to be a "successful action" and Class Counsel's reasonable attorney fees and costs are to be awarded.

As set forth below, Plaintiff is seeking $186,450.00 in attorney fees and $20,495.81 in litigation costs in connection with this action.

## I.    PLAINTIFF IS ENTITLTED TO ATTORNEY FEES AND COSTS UNDER THE FDCPA.

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney's fees to a successful consumer. The Act provides:

> [a]ny debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs

of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a)(3).

In litigation pursuant to the Fair Debt Collection Practices Act, "the award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989), citing *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). "The FDCPA's statutory language makes an award of fees mandatory." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9 Cir. th 2008) (Camacho II) (citation omitted).

Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys in general. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). See also *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990). Similar to an award of attorneys' fees in civil rights cases, an award of fees in FDCPA cases should encourage the bringing of meritorious claims which might otherwise be abandoned and ensure effective access to the judicial process. *City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (rejecting the rule of proportionality in determining and awarding attorneys' fees in § 1983 claims); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

## II.    PLAINTIFF'S REQUESTED LODESTAR IS REASONABLE

The lodestar method is used to determine the amount of reasonable attorneys' fees "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).  And, "[t]he

determination of reasonable attorneys' fees is left to the sound discretion of the trial judge." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1187 (11th Cir. 1983) (citations omitted).

In the Eleventh Circuit, the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) are to be considered by the trial court, together with the prevailing market rate in the relevant legal community, in determining a "reasonable" fee. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).   Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

More recently, in *Perdue v. Kenny*, 559 U.S. 542, 130 S.Ct. 1662 (2010), the United States Supreme Court decided that the lodestar method for determining reasonable fees should be used instead of the "Johnson factors", and it explained why the lodestar calculation is objective.

> One possible method was set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (C.A.5 1974), which listed 12 factors that a court should consider in determining a reasonable fee. This method, however, "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Delaware Valley I, supra,* at 563, 106 S.Ct. 3088.
>
> An alternative, the lodestar approach was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (1973), appeal after remand, 540 F.2d 102 (1976), and "achieved dominance in the federal courts" after our decision in *Hensley. Gisbrecht v. Barnhart,* 535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). "Since that time, '[t]he "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.'" *Ibid.* (quoting

*Dague, supra,* at 562, 112 S.Ct. 2638).

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Developed after the practice of hourly billing had become widespread, see *Gisbrecht, supra,* at 801, 122 S.Ct. 1817, the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, see *Dague,* 505 U.S., at 566, 112 S.Ct. 2638; see also *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 609, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); and unlike the *Johnson* approach, the lodestar calculation is "objective," *Hensley, supra,* at 433, 103 S.Ct. 1933, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

559 U.S. at 550-52, 130 S.Ct. at 1671-72.

Moreover, the Court made clear that "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554, 130 S.Ct. at 1673.  It further explained that "a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, see 42 U.S.C. § 1988 (permitting court, 'in its discretion,' to award fees), but the judge's discretion is not unlimited. It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement." 559 U.S. at 558, 130 S.Ct. at 1676.  As the Supreme Court has previously stated, "[w]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours [spent] are reasonable, the [lodestar calculation] is presumed to be the reasonable fee contemplated" by a statute. *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

Once a figure for attorney's fees is calculated using the *Johnson* factors, that amount

becomes the "lodestar" which can then be adjusted upwards or downwards, again using the *Johnson* factors. *Hensley*, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" 461 U.S. at 434 n.9, 103 S.Ct. at 1940 n.9. If the lodestar figure is properly calculated, adjustment will in most cases be unnecessary. *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986). "Although the 'lodestar' method effectively replaced the *Johnson* balancing test previously employed in the Eleventh Circuit, courts still consider the twelve factors leftover from the balancing test in determining the lodestar amount." *Zachloul v. Fair Debt Collections and Outsourcing*, 2010 WL 1730789, at *1 (M.D.Fla.,2010)(citing *James v. Wash Depot Holdings, Inc.,* 489 F. Supp2d 1341 (S.D.Fla.2007).

The Eleventh Circuit has explained how the Johnson factors are to be used in determining an appropriate lodestar, as follows:

> We still believe that at least some of the *Johnson* factors have utility in establishing the hourly rate. In evaluating comparability of the market rates being attested to, the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court. For example, it is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case. Where the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer.

> The court recognizes that few practitioners who regularly defend the poor and disadvantaged have the opportunity to bill and collect on an hourly basis. Accordingly, it may be virtually impossible to establish a prevailing market rate for such services. Therefore, fee counsel in such cases must seek out close cohorts to provide a measure. Major civil rights class action matters might be akin to plaintiff's class actions in antitrust and securities matters; cohorts might be found in suits brought by professional, business or neighborhood associations against government entities. Single

> plaintiff civil rights cases, of course, find analogies in employment
> discrimination cases and in other disputes where the representation
> is not the product of an ongoing relationship between the attorney
> and the client.

*Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299–300 (11th Cir. 1988).

**1. The time and labor required.**

As set forth in the attached detailed time records and Declarations, Class Counsel spent more than 388.9 hours on this matter[1], which is appropriate for a FDCPA class action that was tried to jury.  (See Exhibit A, Contemporaneous Time Records).  There are three factors which added to the time and expense in this matter.  First, the theory on which suit was brought was relatively novel which is discussed in section 2 below.  Second, LTD filed several dispositive motions and motions for rehearing which drove up the time substantially.  Third, the class action had to be tried to a jury, which is rare for any class action.

**2. The novelty and difficulty of the questions.**

Until the Seventh Circuit's recent decision in *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685 (7th Cir. 2017), there was no published decision holding that a failure to warn the consumer about the potential ramifications of making partial payment on time-barred debts could violate the FDCPA.  In fact, the Pantoja Court reviewed what it called "settled" law before addressing the newer theory stating:

> The point of controversy here concerns efforts to collect consumer
> debts on which the statute of limitations has expired when the
> effort does *not* involve filing or threatening a lawsuit. Compare
> *McMahon*, 744 F.3d at 1020 (dunning letters offering to "settle"
> time-barred debts could violate Act by leading debtors to believe
> the debts were legally enforceable); *Daugherty v. Convergent
> Outsourcing, Inc.*, 836 F.3d 507, 509 (5th Cir. 2016) (effort to
> collect is not automatically unlawful, but letter violates FDCPA if
> it could lead unsophisticated consumer to believe her time-barred

---

[1] These time entries have already been "scrubbed" to remove approximately 20% of time that appeared duplicative or excessive.

*684 debt is legally enforceable); and *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (reversing dismissal on pleadings; offer to settle time-barred debt could violate Act by failing to disclose that suit would be time-barred or that partial payment would remove statute of limitations bar), with *Huertas*, 641 F.3d at 33 (holding that attempt to collect a time-barred debt was permissible if litigation not threatened), and *Freyermuth*, 248 F.3d at 771 (same).

852 F.3d 679, 683–84 (7th Cir. 2017).

As a result, drafting this theory into a Complaint that would withstand scrutiny without the guidance from previous litigation made this matter more difficult and time consuming than most FDCPA letter violation cases. Further, FDCPA letter cases are often *per se* violations which can be readily determined from a simple review of the letter. Here, the theory was based on an absence of information in the letter, which made it much more difficult to prove and riskier to litigate. Accordingly, the lodestar should reflect that this matter took more time and required more expertise in FDCPA litigation than more traditional FDCPA cases.

### 3. The skill requisite to perform the legal services properly.

In addition to knowing and understanding the complexities of a novel FDCPA claim, this case also required counsel to know how to properly certify and try a consumer class action. Accordingly, the hourly rate that should be applied here should be consistent with other consumer class action cases litigated in this District, as opposed to individual FDCPA cases. Moreover, the skills required to try this case to a jury were also required in this action. When the complexities of the theory, the class action component and the trial are considered, this case should be considered to be at the high end of difficultly for consumer protection type cases.

Attached hereto as Exhibit B is the Declaration of John Yanchunis, an attorney at Morgan & Morgan who heads the firm's Complex Litigation Group. (Exhibit B). Morgan & Morgan needs no introduction to this Court as it is one of the most well respected Plaintiff law firms in

the country.   Mr. Yanchunis handles complex consumer class actions before this Court and

across the country. Id. at ¶ 2.  Mr. Yanchunis' declaration speaks to counsels' qualifications and

to the prevailing hourly market rate for lawyers practicing before the Middle District of Florida.

Mr. Yanchunis is familiar with the work product of the attorneys in this case.  Id. at ¶ 15.

Mr. Yanchunis also reviewed the docket and the specific filings in this matter and concluded that

the time spent by Class Counsel was reasonable, in his experience. Id. at ¶16.  Specifically as to

the hourly rates requested, Mr. Yanchunis states in his declaration as follows:

> Based upon my review of the file and other materials, and the legal
> and practical challenges of the case where it appeared that little
> quarter was given by Defendant, Class Counsel was able to
> achieve a very favorable result, first in seeking certification of the
> class, and then in  the  trial of the case to verdict.   For these
> reasons, based on my personal experiences and knowledge of this
> area of the practice, it is my opinion that the hourly rates of Class
> Counsel, $500 per hour for Ms. Varnell and Messrs. Warwick and
> Dietz, and $300 per hour for Steven Simmons, (if not under the
> market) and the amount of time expended litigating this case,
> 388.90 as of June 2, 2017, is very reasonable and commensurate
> with the results obtained.

Id. at ¶ 16.

### 4. The preclusion of other employment.

The time spent on this case was not, and could not be, spent at the same time on other

matters. The law firm of Varnell & Warwick, PA only employs three lawyers.  Obviously, the

hours reflect that at times all three lawyers were working exclusively on this matter.  With such a

relatively  small  firm,  there  are  substantial  opportunity  costs  in  preparing  the  necessary

documentation  and  briefing  to  present  a  federal  class  action  case  to  the  Court.   The  time

expended on Plaintiff's behalf by Class Counsel was time which would have been spent on other

matters  had  this  case  not  been  filed  or  litigated  extensively. It  is  impossible  for  Plaintiff's

counsel to determine what other cases may have been precluded due to their representation of

Ms. Baez and the class, but it is clear that the hours spent on this case would have been expended on other matters.

### 5. The customary fee for like work in the community.

Class Counsel's time and rates are well within the range of similar work.  First, Mr. Yanchunis' declaration indicates that the time and hourly rates charged by Class Counsel are reasonable in his experience as an attorney filing similar cases and practicing consumer class action law within this District.  (See Exhibit B, generally).  In addition, Class Counsel also cites this Court the "United States Consumer Law Attorney Fee Survey Report 2015-2016."  (Exhibit C).  This report is the only one of its kind.  As stated in the Introduction:

> This Survey Report publishes the results of the United States Consumer Law Attorney Fee Survey for 2015-2016. This Survey Report continues to be the only national survey of Consumer Law practitioners in the United States and has been used in more than 35 jurisdictions, including state and federal courts, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates, resulting in more than $7.9 million in awards across the United States.

In *Santarlas v. Steube*, 2017 US. Dist. Lexis 383 (2017), Judge Whittemore, approved the use of the Consumer Law Report when approving prevailing party attorney fees in an individual claim under the Driver's Privacy Protection Act, 18 USC § 2724.

> The reasonableness of the hourly rates is further supported by the United States Consumer Law Attorney Fee Survey Report 2013-2014 conducted by Ronald L. Burdge, Esq. reflecting average hourly rates for attorneys practicing consumer law in Tampa, Florida range from $363/hour to $475/hour for attorneys with 16- 25 years in practice (Dkt. 46-8). See also *Renninger v. Phillips & Cohen Assocs.*, No. 8:10-CV-5-T-33EAJ, 2010 U.S. Dist. LEXIS 92736, 2010 WL 3259417, at *2 (M.D. Fla. Aug. 18, 2010) (considering a consumer law attorney fee survey to determine prevailing market rate).

Id.  But see, *Raimondi v. Zakheim & Lavrar, P.A.*, 2012 WL 1382255, at *6 (M.D.Fla.,2012) (Rejecting 2010 version of Report).

According to the 2016 Florida Consumer Law Survey, the following rates apply to the lawyers and this case:  Median Rate for Attorneys Handling Class Action Consumer cases in Florida generally is $475.  When the number of years in practice is considered, that "Average Hourly Rate for lawyers with 16-20 years of experience is $525.  (Consumer Survey Florida Results page 53-54).

By Region – Tampa (Middle District) is $500 per hour for class action lawyers and $456 for 16-20 years of experience, and $455 for lawyers with 21-25 years of experience (Consumer Survey for Tampa Region Page 209-210).  Rates for consumer class action lawyers in Orlando charge a median rate of $500, and an Average Hourly rate of $467 for lawyers with 16-20 years of experience and $494 for lawyers with 21-25 years of experience. (Consumer Survey, Orlando rates page 212-213). Because this case was litigated in Orlando, these rates are most applicable and are an additional basis for the hourly rates requested by Class Counsel here.

This *Johnson* factor is addressed in greater detail under factor number 12, *infra*, Awards in Similar Cases.

### 6. Whether the fee is fixed or contingent.

As in most FDCPA cases, the attorney fee at issue here is completely contingent -- not on the amount of damages, but on an award by the court or agreement of the opponent. Unfortunately, in *City of Burlington v. Dague*, 505 U.S. 557, 112 S. Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court held that the contingency nature of the agreement cannot provide a basis for an upward adjustment of the attorney fee.  Thus, the current cases hold that the fixed or contingent nature of the fee agreement neither reduces nor enhances the lodestar fee award.

However, a Fourth Circuit opinion recognizes the importance of the contingent nature of fees in consumer cases.  "As an initial matter, contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation. Sadly, a plaintiff sometimes has little to offer a lawyer other than his personal plight." *In re Abrams & Abrams*, 605 F.3d 238, 245 (4th Cir. 2010).  If hourly rates awarded by the Court are unfairly reduced for such work, then lawyers are likely to seek other work which provides for less risk at higher hourly rates.  If that happens, then the purposes underlying the FDCPA will be thwarted.

Plaintiff's counsel willingly provided services to Ms. Baez whether she won or lost her case and whether or not they ultimately got paid for their work.  While this *Johnson* factor provides no basis here for any substantial change in the lodestar, it provides ample support for approval of hourly rates at the higher end of fair market rate continuum.

**7. Time limitations imposed by the client or the circumstances.**

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and the constraints of practice. Ms. Baez is required by Fed.R.Civ.P. 54(d) to file her motion for attorney's fees within 14 days of judgment, and to submit a *Johnson*/*Barber* factors review as required by the Fourth Circuit in order to obtain the costs and fees award to which she is entitled under 15 U.S.C. § 1692k(a)(3).

**8. The amount involved and the results obtained.**

When determining lodestar within the Eleventh Circuit, the relief obtained should be compared to the relief sought in the complaint.  The trial court can then adjust the fee based upon the results obtained.  "If the plaintiff obtained 'excellent results,' his attorney should be fully compensated for all time reasonably expended on the litigation." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578–79 (C.A.11 (Ga.),1987).  "However, if the plaintiff obtained only 'partial

or limited success,' the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief." *Id*. That decision rests in the discretion of the district court." *Id*. An attorney's fee award should not be reduced based on the amount of damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561 574, 578, 106 S.Ct 2686, 2696, 91 L.Ed.2d 466 (1986).

In *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967 (4th Cir. 1987), the Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorney's fees to be awarded in a Fair Credit Reporting Act case. In rejecting an argument by the defendant urging proportionality to the amount recovered, the Fourth Circuit stated:

> Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Id.* at 974.

This Court has rejected proportionality for the same reasons in FDCPA cases. See, *Renninger v. Phillips & Cohen Associates, Ltd.*, 2010 WL 3259417, at *3 (M.D.Fla.,2010)

Here, Class Counsel received the most that it could possibly be awarded under the FDCPA. First, the Complaint asserted that Sections 1692(e)(2)(A), (10), and 1692(f). (Doc. 1, Complaint at 44-46). The jury found all three sections of the FDCPA were violated by LTD. (Doc. 123, Verdict Form). In addition, the jury awarded the statutory maximum to Plaintiff Baez individually and to the class pursuant to Section 1692(f)(A) and (B). Where the jury awards the maximum amount that the statute will allow and finds all three sections of the FDCPA to have been violated, the results obtained must be considered to be exceptional.

**9. The experience, reputation and ability of the attorneys.**

Plaintiff and the Class were represented by four attorneys in this case from the law firm of Varnell & Warwick, P.A.; Janet R. Varnell, Brian W. Warwick, Steven T. Simmons, Jr. and David Lietz.  Karen Stroly is a paralegal at the firm and she has also spent time on this matter. The background and experience of these attorneys justifies rates ranging between $300 and $500 per hour.

First, the law firm of Varnell & Warwick, PA specializes in the area of complex consumer litigation, including consumer class actions. (See Exhibit D, Declaration of Brian W. Warwick, Exhibit E, Declaration of Janet R. Varnell).  During its seventeen years in existence, Varnell & Warwick has been named Class Counsel in more than 35 class actions in both State and Federal Courts throughout the nation.  *Id.*  Its reputation enables it to represent consumers not only in Florida, but in states as far away as Alaska and California.  *Id.*

Janet R. Varnell is a nationally recognized leader in the consumer protection movement *Id.*  She is one the most respected consumer protection attorneys in the State of Florida.  Her most recent consumer class action was prosecuted and settled collaboratively with the Florida Office of the Attorney General and the Department of Financial Regulation.  *Id.*  This was an extraordinarily rare honor and resulted in one of the largest recoveries for consumers in the history of the State of Florida by State Regulators.

She currently serves on the Partner's Council for the National Consumer Law Center in Washington, D.C. ("NCLC").  *Id.*  NCLC is recognized as the leading consumer advocacy organization in the United States.  It publishes manuals and materials for consumer attorneys on a variety of consumer laws, including the FDCPA, and regularly testifies before Congress on

consumer issues.  She has given countless seminars on the practice of consumer law and prosecution of class actions for NCLC and other organizations, including the Florida Bar.  *Id.*

Ms. Varnell formerly co-chaired the Board of Directors of the National Association of Consumer Advocates ("NACA"), which is the nation's leading consumer advocacy membership organization.  Notably, Ms. Varnell was awarded "Consumer Advocate of the Year" in 2009, the organizations highest honorary. *Id.*

Finally, Ms. Varnell also currently serves on the Executive Committee to the Board of Directors for Public Justice, which is the nation's preeminent public interest law firm that litigates high impact cases to combat social and economic injustice, to protect the environment and to challenge corporate or governmental abuses.  www.publicjustice.net.  Ms.  Varnell has also served as the chair of the Florida Bar Consumer Protection Law Committee, is an Arbitrator for the Florida Bar Attorney Fee Arbitration Program and has chaired the Bar's Grievance Committee for the Fifth Judicial District. *Id.*

Likewise, Brian Warwick has acted as lead class counsel in numerous class actions throughout the United States during his 18 years practicing consumer law.  (See Exhibit D, Declaration Brian W. Warwick).  The experience, reputation, and ability of the attorney is reflected in his Declaration.  Mr. Warwick has substantial experience with consumer class actions litigated in numerous state and federal courts.  *Id.* Mr. Warwick has been a speaker at major conferences for the National Consumer Law Center (NCLC).  Mr. Warwick has been the author of numerous amicus briefs for consumer protection and advocacy organizations.  *Id.*

Mr. Warwick's consumer work is reflected in his appellate work.  Within the past two years alone, Mr. Warwick briefed and argued four separate appeals before the Eleventh Circuit

on complex consumer issues ranging from CAFA jurisdiction[2], to 1983 liability for governmental entities[3], to violations of the Truth In Lending Act[4].

Mr. Lietz is the newest member of Varnell & Warwick, PA and his vast experience in trial as well as consumer matters has made him a valuable asset. Mr. Lietz has been practicing for more than 20 years and has tried several complex matters during his career. (Exhibit F, Lietz Declaration).

### 10. The undesirability of the case.

Taking on debt collectors like LTD who are systematically seeking to take advantage of people by collecting on time barred debts where the dunning letters are misleading but not necessarily on the face of the document is not "desirable." Further, the prospect of taking on such litigation and incurring the cost of issuing notice to the class and having to wait for several years before getting paid also makes the case less desirable.

### 11. The nature and length of the professional relationship with the client.

Class Counsel was retained particularly for pursuit of this claim in federal court on specialized consumer protection law issues. Their employment was sought because of their legal abilities and reputation in this area of the law, and in class action litigation in particular. However, this *Johnson* factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are transactional, and not ongoing, matters.

---

[2] *Dudley v. Eli Lilly and Co.*, 778 F.3d 909 (11th Cir. 2014).

[3] *Salvato v. Miley*, 790 F.3d 1286 (11th Cir. 2015).

[4] *Lankhorst v. Independent Sav. Plan Co.*, 787 F.3d 1100 (11th Cir. 2015).

**12. Awards in similar cases.**

Hourly rates between $300 and $500 is the amount billed by Class Counsel in this matter, and is appropriate for the experience levels of the attorneys involved. See Exhibit B, Declaration of John Yanchunis and Exhibit C, Consumer Law Survey Generally.

Finally, the Declarations of Class Counsel provide further detail of their experience. However, of note are the cases in which Florida Courts have recently approved attorney fee awards in similar cases within the past two years. In each of the following cases, the trial court approved a class action settlement which included an attorney fee award to Varnell & Warwick at hourly rates at or above $450 per hour in cases involving consumer protection violations under various fee shifting statutes.

| V&W SETTLEMENTS – 2015-2017 | |
|---|---|
| **CASE** | **HOURLY RATE** |
| *Bryant v. World Imports U.S.A., Inc., d/b/a World Imports,* In the Circuit Court of Duval County, Florida, 2015-CA-005185 | BWW - $550 |
| *Chau v. Cabat Properties, LLC,* In the Circuit Court of Leon County, Florida, 2014-CA-1241 | BWW - $500 |
| *Ebreo v. Vystar Credit Union,* In the Circuit Court of Duval County, 16-2014-CA-00365 | BWW - $500<br>JRV - $500<br>SS - $350 |
| *Inetianbor v. Cashcall, Inc. and John Paul Reddam,* In the United States District Court, Southern District of Florida, 13-60066-CIV-COHN-SELTZER | JRV - $600<br>BWW - $600<br>SS - $300<br>DKL - $500 |
| *Gagnon v. Kia Autosport of Pensacola, Inc., et al.,* In the Circuit Court of Escambia County, Florida, 2014-CA-000084 | BWW - $500<br>SS - $350 |
| *Holt v. HHH Motors, Inc.,* In the Circuit Court of Duval County, Florida, 2012-CA-010179 | BWW - $500<br>JRV - $500<br>SS - $350 |
| *Ioime, et al., v. Blanchard, Merriam, Adel & Kirkland, P.A.,* In the United States District Court, Middle District of Florida, 5:15-cv-13-Oc-30PRL | BWW - $600<br>JRV - $650<br>SS - $350 |
| *Kilby, et al., v. Camaron at Woodcrest, LLC, et al.,* In the Circuit Court of Leon County Florida, 2013-CA-001300 | BWW - $500<br>SS - $375 |
| *Magann v. Datafile Technologies, L.L.C.,* In the Circuit Court of Hillsborough County, 14-CA-007395 | BWW - $500<br>SS - $350 |
| *Riley v Home Retention Services, Inc. et al.,* United States District Court, | JRV - $450 |

| | |
|---|---|
| Southern District of Florida, 2014-CV-20106 | BWW - $450 |
| *Tate v. Navy Federal Credit Union,* In the Circuit Court of Duval County, Florida, 14-CA-000756 | BWW - $500 JRV - $500 SS - $350 |
| *Wood, Atter & Wolf, P.A. v. Record Reproduction Service, Inc.,* In the Circuit Court of Duval County, Florida, 2015-CA-00763 | BWW - $500 JRV - $500 DKL - $350 |
| *Wood, Atter & Wolf, P.A. v. University of Florida Jacksonville Physicians, Inc.,* In the Circuit Court of Duval County, Florida, 16-2014-CA-005771 | BWW - $500 JRV - $500 SS - $350 |

(See Exhibit G, Compilation of Orders Approving Rates in the above cases.)

Furthermore, Courts within the Middle District of Florida have been awarding hourly rates at or near $400 per hour in basic FDCPA or other non-complex cases since at least 2009. *Stone v. Nat'l Enterprise Sys.*, No. 6:08–cv–1523–Orl–22GJK, 2009 WL 3336073, at *2, 5 (M.D.Fla. Oct.15, 2009) ($394.00 per hour reasonable for attorney with fifteen years of experience); *Cook v. Law Offices of Forster & Garbus*, 2010 WL 4941439, at *3 (M.D.Fla.,2010)(citing Stone and its rate of $394).

"Judges within this District have approved hourly rates ranging from $275.00 to $394.00 per hour as reasonable for attorneys with more than fifteen years' experience in FDCPA cases." *Tacoronte v. Cohen*, 2014 WL 5473567, at *4 (M.D.Fla.,2014), citing *Cook v. Law Offices of Forster & Garbus,* No. 6:10–cv–934–Orl–28KRS, 2010 WL 4941439, at *3 (M.D.Fla. Nov.3, 2010) (citing authority within the District). In *Diperna v. Geico General Ins. Co.*, Case No. 6:12–cv–687–Orl–36KRS, Doc. 204, *report and recommendation adopted in part and rejected in part by* 2016 WL 4158553 (M.D. Fla. Aug. 4, 2016), where the court set the hourly rate for counsel with 21 years' experience at $400 per hour, counsel with 7 and 10 years' experience at $225 per hour, and a paralegal at $100 per hour). However, none of these cases were class actions that were tried to a jury. In fact, Class Counsel can find no FDCPA class action that was

tried to a jury where attorney fees were awarded by the Court.  Normally, as set forth above, such cases are settled.

Class Counsel is asking for a modest increase from $400 to $500 in this case because the case required class certification and a full trial on the merits.  Moreover, it is not unreasonable to increase the rates over time to accommodate for normal inflation.  If a rate of $400 per hour was "reasonable" in 2010, lawyers practicing within the Orlando area are subject to the normal increases in expenses as everyone else.  And to cap their hourly rate at $400 per hour simply because that was the rate approved in the past would act to punish Class Counsel by locking them into rates that are 8 years old.

Such strict regard for prior decisions acts contrary to the underlying purpose of the FDCPA.  "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995).

Accordingly, the lodestar calculation for the award of attorney's fees to Class Counsel in this matter for the time expended by all counsel of record totals $186,450.00 in attorney fees, and should be approved by this Court.

### III.    CLASS COUNSELS' COSTS ARE REASONABLE AND SHOULD BE AWARDED

In addition to the attorney's fees set forth above, Class Counsel also seeks reimbursement of $20,495.81 in litigation costs.  (See Exhibit H, Bill of Costs with Supporting Documents).

> A judge or clerk of any court of the United States may tax as costs the following:
>
> **(1)** Fees of the clerk and marshal;

**(2)** Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

**(3)** Fees and disbursements for printing and witnesses;

**(4)** Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

**(5)** Docket fees under section 1923 of this title;

**(6)** Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 USCA § 1920.

Class Counsel's recoverable costs are listed in detail for this Court's review. The largest expense in this case was sending notice to the class. Dahl Administration issued Notice at a cost to Class Counsel of $16,890.24. *Id.* The Supreme Court has stated that "The usual rule is that a plaintiff must **initially** bear the cost of notice to the class. *Eisen v. Carlisle and Jacquelin*, 94 S.Ct. 2140, 2153, 417 U.S. 156, 178 (U.S.N.Y. 1974)(emphasis added). By inclusion of the word "initially," the Court inherently recognized that such costs are indeed recoverable by a successful class action Plaintiff.

Additionally, Class Counsel had to travel to Texas for the depositions of LTD's Corporate Representatives. However, these costs are not recoverable under § 1920, but are listed to inform the Court of additional expenses that were incurred but not recouped in connection with this litigation.

For the reasons set forth herein, Class Counsels' Costs of $16,890.24 should be awarded by this Court. Class Counsel will incur additional time and expense in order complete the resolution of this case, including but not limited to distribution of their pro-rata share of the Judgment to the Class. Such additional time and expenses are compensable. See *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1500-01 (11th Cir. 1986); *Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir. 1988); *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir.

1987); *David v. City of Scranton*, 633 F.2d 676 (3d Cir. 1980); *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979).

## IV.   INCENTIVE AWARD TO PLAINTIFF BEAZ

In addition to the attorneys' fees and costs requested under the FDCPA, Plaintiff requests a class representative incentive award for Liznelia Baez of $2,500.00.  Plaintiff proposes that this incentive award be paid out of the common fund of statutory damages ($49,361.29), before it is awarded to the class.  This incentive fee award is reasonable, given Ms. Baez's contributions to this case.

This Court has previously articulated the legal standards under which requests for incentive awards are evaluated.  *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-CV-59-ORL-40KRS, 2016 WL 2348704 (M.D. Fla. May 4, 2016).  As this Court noted:

> Incentive awards are frequently approved in class actions where the plaintiff was extensively involved in discovery and litigation activities.  Extensive involvement encompasses producing documents, responding to discovery requests, sitting for depositions, attending or testifying at court hearings, participating in settlement negotiations, and consulting with class counsel on litigation strategy. . . .
>
> Incentive awards are also regularly approved where the plaintiff achieved substantial benefits for the class. Substantial benefits include large class settlement funds, significant awards to individual class members, and injunctive relief or the defendant's agreement to stop engaging in the conduct which caused the plaintiff to file suit.  . . .
>
> Indeed, incentive awards in consumer protection lawsuits are largely tied to the plaintiff's involvement and the benefits he or she achieves for the class.

*Palmer*, 2016 WL 2348704, at *9.  In *Palmer*, this Court favorably cited *Good v. Nationwide Credit, Inc*., No. 14-4295, 2016 WL 929368, at *14–15 & n.5 (E.D. Pa. Mar. 14, 2016) (approving $1,000 incentive award for each plaintiff in FDCPA case who spent hours with class

counsel discussing litigation and strategy, attended fairness hearings at great personal expense, and obtained $196,960 class settlement fund which represented the maximum allowable recovery by statute) as an example of a case where an incentive award was justified. *Good* is similar to this case, in that the results achieved were the maximum amount allowed by statute.

Moreover, unlike *Palmer* where the proposed settlement and incentive award was rejected by this Court, achieving a verdict that finds LTD's collection letters to be deceptive and misleading has the practical effect of enjoining LTD and all other debt collectors from sending such letters to Florida consumers in the future (or to do so at grave risk of being successfully sued for so doing). In *Palmer*, the proposed settlement that was rejected allowed "Defendants to continue using the dunning letters which Plaintiff alleges violates the FDCPA. *Palmer,* 2016 WL 2348704, at *10. That is the exact opposite of this case, where Ms. Baez's verdict on behalf of the class establishes a bright line in the sand that debt collectors can only cross at their peril. This is a significant victory for Florida consumers, achieved through Ms. Baez's efforts.

The decision of a sister court in the Southern District of Florida in *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185 (S.D. Fla. 2006) is particularly instructive here, because it was also a class action case that was litigated to judgment, rather than being settled. As such, there is not the same risk of collusion between the class representative and class counsel that the court must guard against in assessing the propriety of an incentive award. "However, the need for structural safeguards against collusion does not apply to cases like this one that have been litigated to judgment. There is no uncertainty about whether the Class Representatives in this case sought the maximum recovery for the class." Allapattah, 454 F. Supp. 2d at 1219–20.

*Allapattah* is also instructive because it was a case where the incentive award was requested after the case was tried to verdict, where no incentive award had been previously

requested.  Despite Defendants' "pre-objection" to this incentive award (lodged as a part of its objection to Plaintiff's Proposed Final Judgment), this is indisputably appropriate.  Federal appellate courts have confirmed that incentive awards are typically sought after verdict:

> Incentive awards are fairly typical in class action cases. See 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed.2008); Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L.Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and 2002 included an incentive award to class representatives). Such awards are discretionary, see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir.2000), and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,  *959 and, sometimes, to recognize their willingness to act as a private attorney general. **Awards are generally sought after a settlement or verdict has been achieved.**

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis added).

The case cited by LTD, *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007), in entirely inapposite.  *Pinto* was a class action settlement, not a verdict.  Thus, the notice could contain the total amount of the settlement, the attorneys' fees and costs requested, and the proposed incentive awards.  LTD is comparing apples to oranges in its objection.

Liznelia Baez played a substantial role in this litigation. This is not a case where lawyers inappropriately recruit a plaintiff to serve as a "figurehead" for a lawsuit the lawyers themselves want to file and settle. In contrast, Ms. Baez's brought LTD's conduct to the attention of the lawyers, and she fully participated in the case by working closely with counsel.  She spent hours discussing the case with her lawyers. She had to review her files for documents.  She had to endure being deposed.  She had to be prepared for her trial testimony, and had to testify at trial. She had to be reminded of her own temporary financial difficulties, and had to bear being characterized as a person who doesn't pay her debts.

Additional reasons support the case for compensating Ms. Baez here. Because this case was tried (and Ms. Baez came to court for trial on two consecutive weeks), and not initially settled, Ms. Baez proved her fidelity to the Class over the course of this fiercely-defended litigation. It must be noted that Ms. Baez had to work overnight on the night prior to the trial, and got virtually no sleep prior to trial.  She had to endure the questions of family and friends as to why she was serving as the class representative in a case that on its face didn't appear to provide her with any great benefit.  Yet, she persisted, took this case to trial, and won on behalf of over 34,000 Floridians.  As the Southern District wrote in *Allapattah*:

> The interests of the Class, such as here, are better served when they are presented by vigilant, competent and independent class representatives who actively monitor class counsel and the conduct of the litigation. Moreover, where lawyers are rewarded for their risk and efforts on behalf of a class, but class representatives are not, there is little incentive for class representatives to serve as active client participants in the litigation, thus negating the "adequate representation" safeguard of Rule 23 and transferring all decision-making responsibility to counsel.

*Allapattah*, 454 F. Supp. 2d at 1221–22.  As a result, the modest incentive award of $2,500.00 is fully justified, under the facts and circumstances of this case.

## V.      CONCLUSION

Accordingly, the following amounts should be awarded to Class Counsel in connection with this case:

1.  Attorney Fees in the amount of $186,450.00;

2.  Costs in the amount of $20,495.81; and

3.  Incentive Award to Ms. Baez in the amount of $2,500.

Respectfully submitted this 16th day of June, 2017.

VARNELL & WARWICK, P.A.

/s/ Brian W. Warwick
BRIAN W. WARWICK, FBN:  0605573

JANET R. VARNELL, FBN:  0071072
DAVID K. LIETZ (ADMITTED PRO HAC VICE)
P.O. Box 1870
Lady Lake, Florida 32158
Telephone: (325) 753-8600
Facsimile:  (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
dlietz@varnellandwarwick.com
kstroly@varnellandwarwick.com

**Michael Tierney, P.A.**
Michael Tierney, FBN: 643475
918 Beard Avenue
Winter  Park,  Florida  32789
Telephone:  (407) 740-0074
Michael@tierneylaw.us

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send a notice of electronic filing to the following:

**GOLDEN SCAZ GAGAIN, PLLC**
DALE T. GOLDEN, ESQ.
201 North Armenia Avenue
Tampa, Florida 33609-2303

Counsel for Defendant

/s/ Brian W. Warwick
**Brian W. Warwick**
