## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LIZNELIA BAEZ, on behalf of herself
and all others similarly situated,**

      **Plaintiff,**

**v.**                                                    **Case No.: 6:15-cv-1043-Orl-40TBS**

**LTD FINANCIAL SERVICES, L.P.,
a Texas Corporation,**

      **Defendant.**
_____/

### <u>DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

COMES NOW, Defendant LTD FINANCIAL SERVICES, L.P. ("LTD"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 50(b), and hereby files this Renewed Motion for Judgment as a Matter of Law, and states the following in support thereof:

### I.  Summary of Arguments.

From the inception of this case via the filing of the Complaint, through class certification, pretrial stipulations, proposed jury instructions, and trial, Plaintiff has steadfastly and unwaveringly pursued a fatally defective legal theory based on a misunderstanding of Florida law. Specifically, the entirety of Plaintiff's FDCPA claims are based on the faulty premise that a mere partial payment on a time-barred debt will "revive" the statute of limitations under Florida law.

Even putting that issue aside, LTD is entitled to judgment as a matter of law as Plaintiff has failed to offer evidence from which a reasonable jury could conclude the following necessary elements of Plaintiff's FDCPA claims:

- That the financial obligation at issue meets the FDCPA's definition of "debt;"

- That the Florida statute of limitations applies to the financial obligation at issue; and

- That the financial obligation at issue was time-barred at the time of LTD's letter.

Moreover, Plaintiff's argument that LTD was required to provide legal advice to Plaintiff regarding the statute of limitations is contrary to existing case law and in fact, would expose LTD to criminal prosecution in the State of Florida. Finally, LTD's utilization of language mandated by two (2) separate federal governmental authorities does not violate the FDCPA.

## II.  Factual/Procedural Background.

### (a) Plaintiff's Theory of Liability.

Plaintiff brought this class action for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). *See,* DE 1, generally. In the Complaint and subsequent Court filings, Plaintiff has consistently and unwaveringly staked her claims on the legal theory that a partial payment on a time-barred debt revives the debt for statute of limitations purposes, under Florida law. *See,* DE 1 at ¶¶ 2, 16, 18, 26, 43, 44, and 46; DE 21 at pp. 1-2; 9, and 12; DE 68 at pp. 2; 5-6; DE 79 at pp. 15-16; and DE 97 at p. 1.

### (b) Trial Proceedings.

At trial, the testimonial evidence presented by Plaintiff consisted of the live testimony of LTD's CEO David John and Plaintiff as well as the reading of portions of the deposition transcripts of LTD's Chief Technology Officer Jim Glaus. *See,* DE 119. The documentary evidence presented by Plaintiff to the jury at trial consisted of the following:

1. LTD's March 3, 2015 Collection Letter;
2. The Class List;
3. All discovery responses by LTD; and
4. LTD's Net Worth documents.

*See,* DE 124.

At the conclusion of the evidence, LTD made an oral Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a) ("Rule 50(a) Motion"). *See,* DE 120. The Court denied LTD's Rule 50(a) Motion in its entirety and the case was submitted to the jury for verdict. *See,* DE 121.On May 8, 2017, after a short deliberation, a jury verdict was reached that awarded $1,000.00 in statutory damages to Plaintiff and statutory damages to the class of $49,361.29.[1] *See,* DE 123.

### III.   Legal Standard.

"[A]s with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is 'legally sufficient ... to find for the party on that issue.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (citing Fed.R.Civ.P. 50(a)(1)). The Eleventh Circuit "Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir.2004) (citation omitted). "Strict identity of issues, however, is not required. So long as they are 'closely related,' such that opposing counsel and the trial court may be deemed to have notice of the deficiencies asserted by the moving party, the purposes of the rule will be satisfied." *Howard*, 605 F.3d at 1243 (citing *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545 (11th Cir. 1986)).

### IV. Legal Arguments.

   a.   **The legal theory doggedly and unwaveringly prosecuted by Plaintiff from inception of the case through trial is fatally defective as it is**

---

[1] The actual jury award appears to reflect an award to the class of "1% 4 mil 936.12903."

**based on a misunderstanding of the effect of partial payment *after* the statute of limitations has expired.**

As demonstrated above, throughout this litigation and trial the Plaintiff's legal theory was that LTD violated the FDCPA by sending Plaintiff a collection letter seeking partial payment of a time-barred debt without advising her that a partial payment would "revive" the debt under Florida law. At trial, the Court indicated its recognition and understanding of Plaintiff's theory, as demonstrated by the following statement made by the Court to Plaintiff's counsel during argument on LTD's Rule 50(a) Motion:

> Didn't your complaint travel under the very specific theory that the deception in this case was that the debt was, in fact, beyond the statute of limitations? Not that the letter is wrong either way, but that the debt was past collectability due to the statute of limitations, therefore, the debt's revived, meaning it's not collectible, it was revived by soliciting payment. That's been the theory.

*See,* DE 136 at pp. 112-13.

LTD never received a ruling on the specific legal theory pursued by Plaintiff, at trial. Instead, as detailed below the Court essentially amended Plaintiff's legal theory via a jury instruction that was requested by neither party and objected to by LTD.

To be sure, even assuming *arguendo* the Florida statute of limitations law applies to the Plaintiff's alleged financial obligation and had expired prior to mailing the letter to Plaintiff, LTD is entitled to judgment as a matter of law on the legal theory Plaintiff pursued in this case as that theory is unsupportable under Florida law.

The potential for revival of the statute of limitations for a time-barred debt is governed by Fla. Stat. § 95.04 which states: "An acknowledgment of, or promise to pay, a debt barred by a statute of limitations must be in writing and signed by the person sought to be charged." Fla. Stat. § 95.04. As such, "a payment on a debt barred by the statute of limitations without an

acknowledgement of the balance of the debt as existing and a willingness to pay the debt *will not* take it out of the statute." *Woodham v. Hill*, 83 So. 717, 719 (Fla. 1919) (emphasis added). Florida is one of the jurisdictions that treats an acknowledgement of a time-barred debt as a new promise. Therefore, pursuant to "[a]n acknowledgment of, or a promise to pay, a debt *barred* by a statute of limitations must be in writing and signed by the person sought to be charged. Fla. Stat. § 5.04; *see also, Coker v. Phillips*, 89 Fla. 283, 103 So. 612 (1925).

The foundation of Plaintiff's case is fatally flawed.  Simply put, Florida law is clear that, contrary to Plaintiff's assertion, mere partial payment in response to LTD's letters would be insufficient to revive the allegedly time-barred debts under Florida law.

In *In re Kessler Mfg. Corp.*, the court rejected the same legal theory asserted by Plaintiff in the Complaint stating:

> FLA.STAT. Section 95.04 is controlling, because the alleged acknowledgment of CLAIMANT'S 1979 and 1982 loans occurred after the four and five year limitation periods had expired (8 and 5+ years).  FLA.STAT. Section 95.04 provides:  An acknowledgment of, or promise to pay, a debt barred by a statute of limitations *must be in writing and signed by the person sought to be charged.*
> …
>
> In addition the financial statements in question are not a sufficient contractual acknowledgement of the debt, otherwise barred by the statute of limitations. As a general rule, a promise to pay a barred debt must be unconditional, and indicate a willingness to pay. Moreover, the new promise must stand or fall upon its own terms, i.e. it must be an enforceable contract in and of itself. The new promise must be clear and definite in its terms, and forms the basis of the new cause of action. In this case, the financial statements are not enforceable contracts, especially when the principal of the company is promising to repay to himself an alleged loan therein.

*Id.*, 109 B.R. at 519 (internal citations omitted).

Likewise, in *Coker v. Phillips*, the Florida Supreme Court cited "2 Section 2930, Revised General Statutes" for the legal axiom "that every acknowledgment of, or promise to pay, a debt barred by the statute of limitations must be in writing and signed by the party to be charged" and ultimately determined "the alleged written acknowledgment or promise to pay the debts barred by the statute, at the time of such payment, and are of the opinion that the letter of Mr. Coker is not sufficiently clear as to the particular debt nor as to an unqualified promise to pay it." *Id.*, 103 So. at 614. As such, *Coker* also supports LTD's position that, contrary to the legal theory in Plaintiff's Complaint, a mere promise to pay does not revive a debt barred by the Florida statute of limitations.

In apparent recognition of this fatal defect, both Plaintiff and the Court sought to remedy the defect at the close of evidence at trial. To be clear, Plaintiff never requested leave to amend the Complaint to address the defect in her theory. Instead, at trial Plaintiff attempted a *de facto* amendment to the Complaint after acknowledging the accuracy of LTD's argument that a mere promise to pay is insufficient to revive a time-barred debt under Florida law. Specifically, Plaintiff re-wrote her legal theory as follows:

> the allegation is partial payment under the circumstances invited by the letter would revive the debt. And so, there's two pieces that pertain to the statute at issue. The law, as Dale -- Mr. Golden discussed is true, you have to have a writing. But here, we have that payment coupon. And that payment coupon, when you tear it off, it has the whole amount. It has the account number on it, and you return it with a signed check. So those two things combined, put in the mail as they requested, would meet the requirements of a time-barred debt under Florida Statute 95.04, because it's -- and you could just acknowledge it. So theoretically, you wouldn't even have to put the check in. If they, you know, returned the coupon and said, I select payment option number 3 to make 12 monthly payments. At that point, under 95.04, all that is required is a signed writing to be sent in acknowledging the debt. And so when you add that they're asking for a payment, the payment with a signed check with the tear-away coupon qualifies under 95.04.We briefed

> it before. And so, it's not just, you know, the payment of the debt by itself, it's the payment with a coupon, as invited in the letter, and the intent to make them pay small amounts. So we think under those circumstances we're allowed to rely on the form of the letter as it was invited, and it does effect Florida law under those circumstances.

*See,* DE 136 at pp. 138 – 39.

As demonstrated above, in the dozen or more times Plaintiff filed a document with the Court – from inception of the case through – setting forth her legal theory of the case, she consistently theorized "partial payment revives a time-barred debt." At no point did Plaintiff ever request leave to amend the Complaint to encompass the alternative theory advanced at trial.

Apparently, the Court had no faith in Plaintiff's new legal theory, as it refused to accept Plaintiff's proposed jury instruction on "partial payment of a time-barred debt." Instead, the Court imposed its own instruction – over LTD's objection – that while consistent with Florida law, was inconsistent with Plaintiff's theory of the case. *See,* DE 136 at pp. 152 – 164. Shockingly, the jury instruction drafted by the Court and given to the jury did not even mention the cornerstone of Plaintiff's legal theory, i.e. partial payment revives a time-barred debt. *See,* DE 112 at p. 12.

Simply stated, Plaintiff implicitly attempted to amend her doomed legal theory at the end of trial without asking for permission to do so. The Court implicitly rejected that attempt and instead, implicitly amended the pending Complaint to impose its own legal theory on the case, as evidenced by Jury Instruction No. 11. *See,* DE 122 at p. 12. As Plaintiff never requested leave to amend the Complaint, it was procedurally improper for the Court to amend the Complaint in the *de facto* manner by which it chose to do.

At the end of the evidentiary portion of trial, Plaintiff was "stuck" with the legal theory she advanced throughout the course of the litigation, i.e. a partial payment on a time-barred debt

revives the statute of limitations under Florida law. As argued by LTD, begrudgingly admitted by Plaintiff, tacitly acknowledged by the Court and confirmed by *Kessler* and *Coker*, a mere partial payment does not revive a debt barred by the Florida statute of limitations. As a result, LTD is entitled to judgment as a matter of law on Plaintiff's legal theory.

> **b. The evidence was legally insufficient, as a matter of law, for a reasonable juror to conclude the statute of limitations had expired on the financial obligations at issue.**

Plaintiff's claims are premised on the allegation the debts at issue was time-barred when LTD mailed its Collection Letter. Whether a debt is time-barred requires a legal analysis of a number of factors, including, but not limited to, knowing which statute of limitations applies, knowing whether the statute of limitations has been tolled or revived, and knowing whether any previous conduct between the consumer and the creditor has altered the underlying agreement that created the debt. Relying on only one fact such as "last payment date may not accurately reflect when the statute of limitations ran." *Clavell v. Midland Funding LLC*, CIV.A. 10-3593, 2011 WL 2462046, at *4 (E.D. Pa. June 21, 2011). To be clear, the evidence at trial was insufficient to create a jury question on the issue of whether the financial obligation at issue was time-barred, as there was no evidence regarding any specific activity relative to the financial obligation LTD sought from Plaintiff.

Instead, Plaintiff relied entirely on the language LTD used in the Collection Letter evidenced by the following allegation in the Complaint: "LTD knows that Plaintiff's debt is time-barred because it includes language in its Collection Letter referencing the age of the debt and stating that 'you will not be sued for the debt.'" *See,* DE 1 at 18.

As will be discussed in greater detail below, Plaintiff and the Class members' unsupported assertion is fatally flawed as the "[d]efinitions [of statutorily defined terms] belong

to the definers, not the defined." *Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014)(citing *United States v. Contreras,* 739 F.3d 592, 596 (11th Cir.2014)).  Moreover, absent from trial was any evidence establishing which state and/or federal statute(s) govern the statute of limitations analysis for the subject financial obligations as well as essential factual criteria, such as date of last payment and/or date of default, upon which to apply to the applicable statute of limitations analysis.

   *i.   The evidence was legally insufficient for the jury to find that Florida law applied to the subject financial obligations.*

In order for the jury to find that the subject debts were time-barred, it was Plaintiff's burden at trial to provide evidence as to which state and/or federal laws apply to those debts. The identification of the applicable statute of limitations law is paramount to Plaintiff's claims as Florida's statute of limitations period is five (5) years while other jurisdictions may allow more or less, for example, as the Court noted during the oral Rule 50(a) hearing, "South Dakota['s statute of limitations] is six years… [so] the debt would not be time barred." *See,* DE 136 at p. 110.  As such, in order for Plaintiff to prevail on her FDCPA claim, she is required to prove Florida law applies for statute of limitations purposes.

The entirety of Plaintiff's evidence relative to Florida was the following: 1) LTD's March 3, 2015 Collection Letter was mailed to Plaintiff's Florida address; and 2) on the date of trial Plaintiff resided "in Orlando, Florida." *See,* DE 136 at p. 86.

At trial, evidence was adduced demonstrating the financial obligation at issue arose from transactions on a credit card issued by CitiBank South Dakota, N.A. ("CitiBank"). *See,* DE 1-1 at p. 2. In addition, it was undisputed that credit cards, like the ones at issue, are <u>always</u> governed by "written agreements." *See,* DE 136 at p. 68. The notion that credit card companies always require a debtor to enter into a written agreement prior to extending financial credit is certainly

not a novel concept. Therefore, as will be shown below, in order to determine which state and/or federal law applies to the statute of limitations for the subject financial obligations, evidence must first be presented as to whether the applicable written agreements contained a choice of law provision and, if not, evidence must be presented as to the location where the agreements were executed.

While it is undisputed the financial obligations at issue are governed by a written agreement, there was no evidence presented as to the terms of those agreements. Specifically, Mr. John testified that LTD does not "have any information regarding what state's law governs th[e] CitiBank account that's indicated in the letter that was sent to [Plaintiff]." *See,* DE 136 at p. 72. Subsequently, Plaintiff was asked whether she had "any knowledge about the terms of the contract with Citibank and [the subject debt's] account" to which she confirmed, "[n]o, I don't." *Ibid.* at pp. 96-97.  Likewise, Plaintiff further testified that she does not have any knowledge as to "what contract applies to any [of the Class' accounts]." *Ibid.* at p. 97.  In fact, Plaintiff testified that she does not even "recall having a Citibank credit card" nor does she have any knowledge as to whether the CitiBank account referenced in LTD's Collection Letter "is [her] credit card or… not." *Ibid.* at pp. 89; 96.

A choice of law provision in the credit card agreement must be enforced as "Florida courts are required to enforce choice of law provisions in contracts unless the law of the foreign state contravenes the strong public policy of Florida or is unjust or unreasonable." *Default Proof Credit Card Sys., Inc. v. Friedland,* 992 So.2d 442, 444 (Fla. 3rd DCA 2008) (citing *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.,* 761 So.2d 306, 311 (Fla.2000)). To that end, the only evidence presented was that Mr. John has encountered "[m]ore than a thousand" different credit card issuers' debts throughout his 30 years in the collection industry

and "all of those credit card issuers… have written agreements that govern their accounts" which "contain choice of law provisions." *See,* DE 136 at pp.  67-68. This uncontroverted evidence established the existence of a choice of law provision in the credit card agreement relative to the account at issue. At that point, Plaintiff was required to demonstrate the choice of law provision indicated Florida law applied or advance other legal arguments for refusing to enforce the choice of law provision. Plaintiff did neither. As such, there was no basis for the Court to make a finding as a matter of law that Florida law applied, as evidenced by the Court's jury instructions.

At the close of trial, Plaintiff improperly argued it was LTD's burden to come forward with evidence negating Plaintiff's position that Florida law was controlling. When questioned by the Court regarding the record evidence supporting the claim Florida law applies, Plaintiff's counsel stated: "It's a debt for a consumer within the state of Florida, and we're allowed to assume Florida law applies." *Ibid.* at p. 113. When pressed further by the Court, counsel stated:

> we know it's a credit card debt. They allege it was a credit card debt. And the statute of limitations for a credit card debt says five years. Now, if there was evidence put in the record that says here is the contract and it goes to be six years then we could say, okay, we now have something to trump the regular rule which is if you don't have any documents you assume Florida law applies, because that's where she's located and that's what the statute says. And they haven't produced any documents. They're the ones that have access to all this stuff. We've already said she didn't have access to these things. Eight-year-old debt, so she doesn't have the contract, she doesn't have any of those things. Yes, we could have collected that.

*Ibid.* at pp. 113 – 14.

Stated succinctly, Plaintiff's position was: Florida law applies unless LTD proves it does not apply. The Eleventh Circuit Court has consistently held "the fact that a case is proceeding as a class action does not in any way alter the substantive proof required to prove up a claim for

relief" (*State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 315 (5th Cir. 1978)[2]) and that class action claims are not entitled to "presumption[s] that would relieve plaintiffs of their burden of having to prove every element of a claim" and threaten to "provide recovery to some persons who had not proved" the essential elements of their claims. *See, Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1365 (11th Cir. 2002), *abrogated by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008).

In the instant case, LTD has no burden of proof. Instead, Plaintiff was required to prove all the necessary elements of her claim including that the debt at issue was time-barred. Plaintiff claims Florida's statute of limitations applies. She therefore was required to *prove* Florida law applies and cannot rely on an absence of evidence from LTD that Florida law applied. Yet, that is what occurred at trial in this case. The Plaintiff improperly argued Florida law applies by default and that LTD had the burden to prove it did not. *See, Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1070 (11th Cir. 2014) ("district court improperly shifted the burden of proof, forcing Reynolds to prove that Richard's death was caused by something other than smoking.")

The evidence was undisputed that the credit card at issue contains a choice of law provision. Plaintiff did not refute that evidence and offered no evidence that the choice of law provision indicated Florida law would control. Hence, Plaintiff failed to satisfy her burden of proof that the Florida statute of limitations applies.

Moreover, even assuming the written agreement with CitiBank did not contain a choice of law provision, Plaintiff still failed to provide legally sufficient evidence to satisfy her burden of proof regarding the applicable statute of limitations. Florida law is clear that, in the absence of

---

[2] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

a choice of law provision, the *lex loci contractus* doctrine applies. *See, Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995); *Goodman v. Olsen,* 305 So.2d 753, 755 (Fla.1974).

"The doctrine of *lex loci contractus* directs that, in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made, *i.e.,* where the last act necessary to complete the contract is done. *See, In re Estate of Nicole Santos,* 648 So.2d 277 (Fla.Dist.Ct.App.1995). "The [*lex loci contractus*] determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.,* 363 F.3d 1089, 1092–93 (11th Cir.2004) (quoting *Pastor v. Union Cent. Life Ins. Co.,* 184 F.Supp.2d 1301, 1305 (S.D.Fla.2002)). The same rules apply to alleged oral agreements. *See, e.g., Motmanco v. McDonald's*, No. 3:04-cv-270-J-99HTS, 2005 U.S. Dist. LEXIS 33965, at * 11 (M.D. Fla. March 30, 2005). So even assuming for the sake of argument there was no *written* credit card agreement, there is nonetheless an absence of evidence upon which the jury could find that Plaintiff's agreement with Citibank was entered into in Florida.

The entirety of Plaintiff's evidence in that regard consisted of the following: LTD's March 3, 2015 Collection Letter was mailed to Plaintiff's Florida address and on the date of trial Plaintiff resided "in Orlando, Florida." *See,* DE 136 at p. 86. As the debt at issue was allegedly time-barred, it was necessarily incurred several years prior to Plaintiff receiving LTD's letter sent on behalf of a debt buyer that had purchased the debt from Citibank. Plaintiff failed to elicit any testimony or offer any  evidence regarding where she lived prior to her receipt of LTD's

letter, much less where she was living when "the last act necessary to complete the contract [wa]s done." *See, In re Santos*, supra.

To be clear, there was no evidence presented that Plaintiff entered into the contract with Citibank, made a single purchase or payment, or defaulted on the credit card while residing in Florida. Instead, the only evidence relative to the debt was that she received a letter from a collection agency on behalf of a debt buyer several years after the account became delinquent. Despite this lack of evidence, the Court characterized the credit card at issue as "a Florida credit card" (DE 136 at p. 117), stated the obligation was "a Florida debt" (*Ibid.* at p. 124) and on two separate occasions stated the debt was "incurred" in Florida (*Ibid.* at pp. 118; 125). There is no evidence to support any of these conclusions or the Court's determination that Florida law applies.

The only evidence offered at trial was the subject financial obligations arose from credit cards that always have a written agreement governing their terms. *Ibid.* at pp. 67-68. Therefore, the applicable statute of limitations would be determined by the written agreement's choice of law provision or, in the absence of a contractual provision specifying the governing law, through a fact—intensive determination in accordance with the doctrine of *lex loci contractus. See, Prime Ins. Syndicate, Inc.,* 363 F.3d at 1092-93. Under either scenario, Plaintiff failed to offer evidence that Florida's statute of limitations law applies to the subject financial obligations as a matter of law. As such, LTD is entitled to judgment as a matter of law on Plaintiff's claims.

### ii) Even if Florida's statute of limitations law applies, the evidence was legally insufficient for the jury to find that the debts were time-barred.

Plaintiff's theory of liability is that LTD failed to include certain language in its Collection Letters attempting to collect upon debts that were outside the statute of limitations or "time-barred." *See,* DE 1, generally. By alleging that each subject financial obligation was time-

barred, Plaintiff tacitly conceded "Defendant['s] liability will depend on the status of each class members' debt–that is, whether the statute of limitations had lapsed on their debt at the time Defendant[] sent the letter in the form of Exhibit A." *Riffle v. Convergent Outsourcing, Inc.*, 614CV1181ORL22KRS, 2015 WL 6778001, at *4 (M.D. Fla. Nov. 2, 2015)(Conway, J.)(emphasis in original); *see also, Castro v. Collecto, Inc.*, 634 F.3d 779, 783 (5th Cir.2011) (noting that plaintiffs had to "show that their debts ... were time-barred" before proceeding on their FDCPA claim).

This Court has held that "many factors must be considered when determining the expiration of a limitations period, one in particular being the accrual date" and that "to determine whether each class member's debt is time-barred, the Court would first need to review the applicable […] agreements to determine when the limitations period began to accrue." *Riffle*, 2015 WL 6778001 at *5.

Plaintiff testified that she does not "recall having a Citibank credit card" nor does she have any knowledge as to whether CitiBank account referenced in LTD's Collection Letter "is [her] credit card or… not." *See*, DE 136 at pp.  89-96. Plaintiff further confirmed that she does not "have any knowledge as to the payment history on [the CitiBank account referenced in the Collection Letter sent to Plaintiff or]… the payment history on any of the [Class member's] accounts." *Ibid.* at pp. 96-97.  Therefore, the evidence is legally insufficient for the jury to find that the applicable statute of limitations period had expired.

Instead, in order to establish that the financial obligations were time-barred Plaintiff relies on the fact that LTD included the following language in its Collection Letters: "[t]he law limits how long you can be sued on a debt. Because of the age of this account, you will not be

sued for the debt." *See,* DE 1 at ¶ 40. Importantly, by its express language, the Collection Letter does not "acknowledge" Plaintiff's debt was time-barred.

Even if LTD's Collection Letters explicitly stated that the applicable statute of limitations period *had* expired, LTD's non-legal assessment of a legally defined concept would still not be legally sufficient evidence that the statute had actually expired. *See, Fenello,* 577 F. App'x 899, 902 (11th Cir. 2014); *see also, Church v. Accretive Health, Inc.,* 2014 WL 7184340, *6 (S.D. Ala. Dec. 16, 2014) ("the law is clear that a third-party agency like Accretive has no power unilaterally to recharacterize a debt's status into something it is not in order to remove it from the ambit of the FDCPA").

In *Fenello,* the debtor plaintiff alleged that the defendant was a "debt collector," as defined by § 1692g(b) of the FDCPA, because the defendant represented itself as such in written correspondence to plaintiff. *Id.,* 577 F. App'x at 902. The Eleventh Circuit ruled:

> Th[e] [plaintiff's] argument is unavailing… because it rests on the fundamentally flawed assumption that a litigant can amend the definition of a statutorily-defined term. As we have said with regard to statutorily-defined terms in another context, "[d]efinitions belong to the definers, not the defined." *See United States v. Contreras,* 739 F.3d 592, 596 (11th Cir.2014) (quotation marks omitted). An entity cannot transform itself into a "debt collector" within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act… In this case, the district court correctly concluded that Bank of America was not a "debt collector" for purposes of § 1692g(b) because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer.

*Id.* (internal citations omitted).

To be sure, the Eleventh Circuit has held the determination of whether a statutory definition is met involves applying facts to the statutory definition, not simply relying on an entity's statement in a letter, i.e. an alleged admission. *Fenello,* 577 F. App'x at 902.The only

evidence as to why the pertinent language appears in the Collection Letters was provided by Mr. John who was asked whether the pertinent "language is only included [in a collection letter] when [Defendant] believes the debt to be time barred" to which Mr. John replied, "No." *See,* DE 136 at p. 42. Mr. John went further to describe the generalized, assumption-based, "conservative and err on the side of caution" analysis performed by LTD when deciding generally whether to include the pertinent language in a collection letter. *Ibid.* at p. 43.  Mr. John described the general analysis as "[w]e go 59 months from when the account was seven months less than the charge-off date." *Ibid.* at p. 45. LTD's internal process for determining whether to include the subject language in a collection letter is limited to "information… coming from the creditor," if it was provided, that "could be wrong" including the "charge-off date," "date of last payment," and "[e]ven the name of the account holder." *Ibid.* at pp. 70-72.  As for Plaintiff's specific account, Mr. John confirmed that prior to mailing its Collection Letter to Plaintiff, LTD did not have "any information on what purchases actually make up the balance," "any information regarding what state's law governs this CitiBank account that's indicated in the [Collection Letter sent to Plaintiff]," or "whether there were ever any verbal promises to pay made by Ms. Baez after the past payment and before the statute of limitations had run." *Ibid.* at pp. 71-72.

In addressing LTD's Rule 50(a) argument on this issue, the Court relied entirely on generalized testimony regarding a formula used by LTD when determining whether to include the statement, "The law limits how long you can be sued on a debt. Because of the age of the debt, you will not be sued for the debt" <u>and</u> the inclusion of the statement in the letter in ruling a jury issue existed on the statute of limitations issue. More specifically, the Court stated: "…the letter sent by [LTD] on Ms. Baez's account … states, "The law limits how long you can be sued

on a debt. Because of the age of the debt, you will not be sued for the debt," that sounds like LTD is saying because your account is too old, you can't be sued. That's statute of limitations." *See,* DE 136 at p. 104.

The Court's analysis resulted in an impermissible utilization of the statement in the letter as a judicial admission by LTD. To be sure, the Eleventh Circuit has held the determination of whether a statutory definition is met involves applying facts to the statutory definition and not by an entity's alleged admission. *See, Fenello*, 577 F. App'x at 902.

Plaintiff's entire theory of liability is premised on the allegation that Plaintiff's and the Class member's debts were barred by Florida's statute of limitations yet failed to provide any evidence sufficient to establish that Florida was the applicable law or that Florida's statute of limitations period had actually expired. Accordingly, LTD is entitled to judgment as a matter of law.

> **c. The evidence was legally insufficient for the jury to find that the financial obligations at issue are "debt[s]" as defined by the FDCPA as a matter of law.**

The Eleventh Circuit has unequivocally held that in order to be entitled to relief under the FDCPA, a plaintiff must make a "threshold showing that the money being collected qualifies as a 'debt' as defined by the FDCPA." *Oppenheim v. I.C. System, Inc.*, 627 F.3d 833, 837 (11th Cir. 2010). In determining what qualifies as a "debt" for FDCPA purposes, the Eleventh Circuit Court has held that even if the transaction is for "personal" as opposed to "business" purposes, it does not fall under the purview of the FDCPA unless it arises from a consensual transaction.

In *Hawthorne v. Mac Adjustment, Inc.,* the Court held: "transaction necessarily implies some type of business dealing between parties." *Id.,* 140 F.3d 1367, 1371 (11th Cir. 1998). The Court held the debt at issue arose out of an auto accident caused by plaintiff and therefore, was

not the result of a transaction. *Id.* Courts have found numerous examples of non-business related debts that nonetheless do not fall under the purview of the FDCPA. *See, e.g. Antoine v. State Farm Mut. Auto. Ins. Co.,* 662 F. Supp. 2d 1318 (M.D. Fla. 2009) (Civil judgment resulting from tortious conduct was not "consumer debt" under the FDCPA); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86 (4th Cir. 1994) (Child support payments are not "debts" encompassed within scope of FDCPA).

At trial, Plaintiff's evidence consisted of Plaintiff simply denying she had used the card for "business" purposes. *See,* DE 136 at pp. 87-88. Plaintiff offered no testimony that the balance at issue was the result of consensual transactions as opposed to non-consensual transactions.

In *Garcia v. LVNV Funding LLC*, the plaintiff argued that the underlying credit card debt was not his own and, as such, was unable to produce any evidence regarding whether the debt fell under the purview of the FDCPA. *Id.*, 2009 WL 3079962, at *4 (W.D. Tex. Sept. 18, 2009). The Magistrate found, "Because the burden is on Garcia to prove that he has been the object of collection activity arising from *consumer* debt for the FDCPA to apply… and because Garcia fails to make a showing sufficient to establish the existence of an element essential to his case, the undersigned believes that summary judgment should be granted on all of Garcia's claims." *Id.* at *5 (emphasis in original). In its ruling, the Magistrate emphasized:

> What is troubling about this issue is that Plaintiff surely could have sought discovery on what the credit card was used for—regardless of who actually used it—which could *perhaps* create a fact issue on whether that use was primarily for personal, family, or household purposes. Instead, Plaintiff relies entirely on his mistaken belief that Defendants admitted this fact in their answers. Defendants' reply states that the reason they could neither admit or deny that the underlying indebtedness was incurred primarily for personal, family, or household purposes is that they did not know why the indebtedness was incurred. Defendants further show that Plaintiff does not know for what purpose the indebtedness was incurred, as he denies that the debt was his. Thus, the Court is

> faced with a scenario where the moving party has met their initial burden of demonstrating an absence of evidence on an essential element, and the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial.

*Id.*

In the instant case Plaintiff had the burden to prove the financial obligation was a "debt" for the FDCPA to apply. At trial, Plaintiff failed to offer any such evidence even though counsel admitted Plaintiff "could have collected that" from Citibank. *See,* DE 136 at pp. 113 - 14.

As such, Plaintiff offered no evidence sufficient for the jury to find that her own or any of the Class members' debts fell under the FDCPA's definition of "debt" arising "out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *See,* 15 U.S.C. 1692a(5).

### d. Inclusion of language mandated by two governmental agencies does not violate the FDCPA.

The Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB") exercise certain statutory oversight on the financial services industry. As part of their duties, each agency has the ability to prosecute legal actions against debt collectors and debt buyers. Both agencies have not only explicitly endorsed, but have mandated, the inclusion of the language Plaintiff claims violated § 1692e(10),in a collection letter on debts that may be time-barred.

In 2012, the FTC brought an action against a debt buyer in federal court in the Middle District of Florida. *See, United States v. Asset Acceptance, LLC*, Case No. 12-CV-00182 (M.D. Fla. 2012). The case ultimately resolved and a Consent Decree pursuant to which the debt buyer was required to include the following disclosure in letters seeking to collect time-barred debts:

"The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." *Id.*, DE 5 (January 31, 2012).[3]

In 2015, the CFPB commenced an administrative action against debt buyer Portfolio Recovery Associates, LLC ("PRA"). *See,* 2015-CFPA-0023 – Consent Order.[4] Ultimately, the parties entered into a settlement that resulted in a Consent Order requiring PRA to include the following language in letters sent to collect time-barred debts: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you." *Ibid.*

In *Valle v. First Nat'l Collection Bureau, Inc.*, the court examined similar language of a collection letter also alleged to have violated the FDCPA and the court found no violation, stating "the fact that the two agencies charged with enforcing the FDCPA mandated the language used by the Defendant serves to reinforce its finding that the language does not constitute a false representation or a deceptive means of collecting the debt*." Id.*, No. CV 16-62751-CIV, 2017 WL 2126830, at *6 (S.D. Fla. May 16, 2017). The court granted defendant's motion for judgment on the pleadings stating:

> The consent decrees are not binding in this case because neither the Plaintiff nor the Defendant were a party to those cases. The question is whether the fact that the FTC and CFPB mandated the use of the language utilized by the Defendant in those consent decrees is of any persuasive value to this Court. An agency's informal interpretation of a statute, such as opinion letters, policy statements, agency manuals, and enforcement guidelines, are not entitled to deference. However, such interpretations are entitled to respect "to the extent that those interpretations have the power to persuade." The consent decrees do not explain why the CFPB and the FTC chose the specific language that is mandated to be used by the decrees. However, the Court does find that the fact that the two agencies charged with enforcing the FDCPA mandated the language used by the Defendant serves to reinforce its finding that the language does not constitute a false representation or a deceptive means of collecting the debt.

---

[3] A complete copy of the Consent Decree is attached hereto as Exhibit 1.
[4] A complete copy of the Consent Decree is attached hereto as Exhibit 2.

*Id.*, 2017 WL 2126830, at *6 (internal citations and quotations omitted).

Like *Valle*, LTD's Collection Letters contain nearly identical disclosure language that was mandated by the FTC and CFPB. In fact, the evidence presented at trial established that the relevant language in LTD's Collection Letters was purposefully included based on the CFPB's mandate in *Asset Acceptance*, as Mr. John testified that LTD "just took [the pertinent language] verbatim from was the CFPB told [Asset Acceptance, LLC] to do thinking if they're telling [Asset Acceptance, LLC] to do it, that's what [the CFPB] wants done. Let's do what they want." *See,* DE 136 at pp. 64 – 65.  Given that fact, it would be odd, indeed, to find the language violates the FDCPA as claimed by Plaintiff.

As a result, even if a partial payment *could* reset the statute of limitations under Florida law, LTD's Collection Letters contain language mandated by two governmental agencies designed to correct any misimpression by unsophisticated consumers when attempting to collect on time-barred debts. Courts and agencies addressing such situations have found that such language, even under the circumstances alleged by Plaintiff, does not violate the FDCPA. *See*, e.g., *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 400 (6th Cir. 2015) (although Michigan statute of limitations would reset with partial payment of expired debt, statement in collection letter that "[t]he law limits how long you can be sued for a debt. Because of the age of your debt [the debt owner] will not sue you for it, and [the debt owner] will not report it to any credit reporting agency" would "correct[  ] any possible misimpression by unsophisticated consumers"); *Filgueiras v. Portfolio Recovery Assocs., LLC*, No. CV158144JLLSCM, 2016 WL 1626958, at *9-11 (D.N.J. Apr. 25, 2016) (accepting, without discussion, plaintiff's allegation that partial payment "would restart the statute of limitations, giving [t]he creditor a new opportunity to sue for the full debt," but holding that a collection letter stating that "[b]ecause of

the age of your debt, we will not sue you for it" did not violate the FDCPA "because the least sophisticated debtor would not interpret it [to] misrepresent the legal status of the Debt"); Federal Trade Commission, ECF No. 12-4 at 47, 48 n.201 (observing that, "under the laws of most states, a partial payment on a time-barred debt revives the entire balance of the debt for a new statute of limitations period" but citing the *Asset Acceptance* Consent Decree disclaimer that the "law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it" as compliant with the FDCPA) (citing Consent Decree at 13 *Asset Acceptance, LLC*, No. 8:12–cv–00182 (M.D.Fla. Jane 31, 2012)).

Therefore, Plaintiff and the Class members have failed to present legally sufficient evidence upon which the jury could find that LTD's Collection Letters violate the FDCPA as a matter of law.

### e.  The FDCPA cannot be interpreted to require LTD to unlawfully provide legal advice to debtors.

There are certain state laws that extinguish a debt once the statute of limitations expires. Florida is not one of those states. Therefore, LTD had a right to seek repayment of the debt at issue even if there was evidence that the statute of limitations had expired. It is Plaintiff's position that in attempting to collect the debts, LTD was required to form an opinion on the issue of whether the statute of limitations had expired on the pertinent debts and provide that opinion to Plaintiff. However, the FDCPA imposes no such duty. *See, Olsen v. Cavalry Portfolio Servs., LLC*, 2016 WL 4248009, *2 (M.D. Fla. Aug. 11, 2016) ("the FDCPA imposes on Cavalry no duty to advise Olsen of potential defenses, including the expired limitation or the consequence of partial payment"); *see also, Ehrich v Convergent Outsourcing, Inc.,* 2015 WL 6470453 (S.D. Fla. October 28, 2015) ("the FDCPA does not require a debt collector to advise a consumer of a debt's time-barred status, and an offer to settle is not in and of itself a threat to sue."); *Boedicker*

*v. Midland Credit Mgmt., Inc.*, No. 16-2213-JTM, 2016 WL 7492465, at *5 (D. Kan. Dec. 30, 2016) ("No case has determined that a debt collector must warn of a potential revival of a time-barred claim, and the relevant administrative agency has explicitly declined to require such a warning, precisely because of the danger of consumer confusion.").

The FDCPA was not enacted to require debt collectors to advise consumers of potential defenses to legal actions. *See, e.g., Dimatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 14-3746, 2015 WL 4281508, at *2 (2d Cir. July 16, 2015) ("SUMMARY ORDER") (recognizing that the FDCPA does not require communications from debt collectors to identify defenses that consumers might present).

Whether a debt is time-barred requires a legal analysis of a number of factors, including, but not limited to, knowing which statute of limitations applies, knowing whether the statute of limitations has been tolled or revived, and knowing whether any previous conduct between the consumer and the creditor has altered the underlying agreement that created the debt. Relying on only one fact such as "last payment date may not accurately reflect when the statute of limitations ran." *Clavell*, 2011 WL 2462046, at *4.

The Eleventh Circuit has consistently held a determination of the effect of a statute of limitations presents a legal issue. *See, United States v. Gilbert*, 136 F.3d 1451, 1453 (11th Cir. 1998) (district court's interpretation and application of statute of limitation subject to de novo review as question of law); *see also Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998) (same).

It is therefore beyond dispute that a determination of the applicability of a particular statute of limitations to a debt requires legal analysis and opinion. In Florida, it is illegal for non-attorneys to provide legal advice. The Florida Supreme Court has specifically determined that a

letter drafted by non-attorneys providing legal advice regarding the statute of limitations constitutes the unauthorized practice of law. *See, The Florida Bar v. Spann*, 682 So. 2d 1070, 1073 (Fla. 1996) ("the letters authored by [] nonlawyer employees contained legal advice that only a lawyer can give."). The unauthorized practice of law in Florida is a third degree felony, punishable by up to five (5) years in prison. *See,* Fla. Stats., § 454.23, § 775.082(3)(e).

Plaintiff seeks this Court's approval in creating a situation in which debt collectors will be placed in the proverbial "no-win" situation. That is, Plaintiff asks this Court to insert in to the FDCPA a requirement that all debt collectors analyze accounts to determine whether they believe the applicable statute of limitations has expired and then, provide legal advice to debtors on the issue. The provision of legal advice in the State of Florida would subject the debt collector to potential criminal charges for the unauthorized practice of law. Conversely, the failure to provide this legal advice would subject the debt collector to liability under the FDCPA. If Plaintiff has her way, the debt collector's choice is to either violate Florida law or federal law as there is no middle ground.

As the FDCPA does not require debt collectors to provide legal advice to consumers and Florida law prohibits non-attorney debt collectors from providing such advice, LTD was not required to provide legal advice to Plaintiff or the Class regarding the application of the statute of limitations to the subject debts.

**V. Conclusion.**

Based on the foregoing, LTD is entitled to judgment as a matter of law on Plaintiff's claims.

**WHEREFORE,** Defendant respectfully requests an Order from this Court granting the instant Motion and entering judgment in favor of Defendant.

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

The undersigned counsel hereby certifies that he has conferred in good faith by telephone

with counsel for Plaintiff regarding the relief requested herein and that he has been informed that

Plaintiff opposes such relief.

Respectfully submitted,

/s/ Dale T. Golden
Dale T. Golden, Esq.
Fla. Bar No.: 0094080
/s/ Joseph C. Proulx
Joseph C. Proulx, Esq.
Fla. Bar No.: 0056830
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609
P - (813) 251-5500
dgolden@gsgfirm.com
jproulx@gsgfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2017, I electronically filed the foregoing with the Clerk
of the Court using the CM/ECF.  I also certify that the foregoing document is being served this
day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF
or in some other authorized manner for those counsel or parties who are not authorized to receive
electronically Notices of Electronic Filing.

/s/ Dale T. Golden
Dale T. Golden, Esq.