### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LIZNELIA BAEZ, on behalf of herself
and all others similarly situated,**

**Plaintiff,**

                                                    **Case No.: 6:15-cv-1043-Orl-40TBS**

**v.**

**LTD FINANCIAL SERVICES, L.P.,**

**Defendant.**

_____/

### PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiff Liznelia Baez, moves this Court for an award of attorneys' fees and expenses payable by Defendants LTD Financial Services, L.P. pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k(a)(3). Plaintiff also moves this Court for a class representative incentive award of $2,500.00 to Liznelia Baez, payable from the statutory damages awarded to the Class. The following is stated in support thereof.

1.      On June 15, 2015 Plaintiff commenced this class action alleging Defendants violated the FDCPA. (DE 1)

2.      Plaintiff's Motion for Class Certification and supporting documents were filed November 20, 2015. (DE 21)

3.      By Order of June 9, 2016 the Court granted Plaintiff's Motion for Class Certification in part. (DE 36)

4.      The case proceeded to trial, and was tried before a jury on May 8, 2017. A verdict was rendered in favor of Plaintiff and the certified Class.

5.      Final judgment was entered by this Court on June 2, 2017, in favor of Plaintiff and the certified class.  (DE 134)

6.      The Order of Final Judgment ordered that any motion for attorney's fee and expenses, for any class representative incentive award, and any bill of costs shall be filed within fourteen (14) days of the date of the Final Judgment.  Plaintiff now files this Motion in response to the Order of Final Judgment.

7.      Defendant appealed the Order of Final Judgment to the Eleventh Circuit Court of Appeals, and on December 7, 2018, the judgment of this Court was affirmed.  The mandate was issued on January 7, 2019. (DE 172).  Pursuant to this Court's Order of January 24, 2018 (DE 170), Plaintiff was granted leave to refile her motion for attorneys' fees and affidavits no later than fourteen (14) days after entry of a mandate by the Court of Appeals.

8.      Plaintiff and the Class are represented by attorneys Brian W. Warwick, Janet R. Varnell, and David K. Lietz, and were previously represented by attorney Steven T. Simmons, Jr.

9.      Plaintiff's attorney Brian W. Warwick expended a total of 199.50 hours on behalf of Plaintiff through January 19, 2019.  See Exhibit A ("Varnell & Warwick Timesheet").  Mr. Warwick seeks an hourly rate of $500.00 for time expended on the matter, making his lodestar $99,750.00 (199.50 hours x $500/hr. = $99,750.00).  See Exhibit B (Warwick Decl. ¶11).  Mr. Warwick also seeks reimbursement for his firm's litigation expenses of $23,042.22 through January 19, 2019.  Warwick Decl., ¶16.  Mr. Warwick requests an award of $122,792.22 for his time and expenses through January 19, 2019.

10.     Plaintiff's attorney Janet R. Varnell expended a total of 120 hours through January 19, 2019 on behalf of Plaintiff and the certified Class.  See Exhibit A.  The hourly rate for the services provided by Ms. Varnell is $500 per hour. *See* Exhibit C ("Varnell Decl.").  The total

lodestar calculation for the services of Ms. Varnell is $60,000.00 (120 hours x $500/hr. = $60,000.00).  Ms. Varnell requests an award of $60,000.00 for her time through January 19, 2019.

11.     Plaintiff's attorney David K. Lietz expended a total of 165.60 hours through January 19, 2019 on behalf of Plaintiff and the certified Class. See Exhibit A.  The hourly rate for the services provided by Mr. Lietz is $500 per hour. Exhibit D ("Lietz Decl."), filed herewith. The total lodestar calculation for the services of Mr. Lietz is $82,800.00 (165.60 hours x $500/hr. = $82,800.00).  Mr. Lietz requests an award of $82,800.00 for his time through January 19, 2019.

12.     Former Plaintiff's attorney Steven T. Simmons, Jr. expended a total of 34.60 hours through June 16, 2017 on behalf of Plaintiff and the certified Class, while he was an employee of Varnell & Warwick, P.A.  See Exhibit A.  The hourly rate for the services provided by Mr. Simmons is $300 per hour. The total lodestar calculation for the services of Mr. Simmons is $10,380.00 (34.60 hours x $300/hr. = $10,380.00).  Varnell & Warwick requests an award of $10,380.00 for Mr. Simmons' time through June 16, 2017.

13.     The lodestar calculation for Varnell & Warwick paralegal Karen Stroly is 4.8 hours x $150/hour) $720.00.  See Exhibit A.

14.     As set forth more fully in the attached Memorandum of Law, Class Counsel requests an award of $253,650.00 in attorneys' fees and $23,042.22  in costs for a total of $276,692.00 for their time and litigation costs reasonably incurred through January 19, 2019.

15.     Plaintiff also requests a class representative incentive award of $2,500.00 for Liznelia Baez, to be paid out of the statutory damages awarded to the Class.

## MEMORANDUM OF LAW

The FDCPA provides that reasonable attorneys' fees and other litigation costs may be awarded in any "successful action."  Because the jury determined that Defendant violated three separate sections of the FDCPA (1692(e)(2), 1692(e)(10), and 1692(f)) and awarded the statutory maximum to Plaintiff and the class, this case must be considered to be a "successful action" and Class Counsel is entitled to reasonable attorney fees and costs.  Plaintiff seeks $253,650.00 in attorney fees and $23,042.22 in litigation costs in connection with this action.

### I.     PLAINTIFF IS ENTITLTED TO ATTORNEY FEES AND COSTS UNDER THE FDCPA.

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney's fees to a successful consumer. The Act provides:

> [a]ny debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a)(3).

In litigation pursuant to the Fair Debt Collection Practices Act, "the award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989), citing *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). "The FDCPA's statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Financial, Inc*., 523 F.3d 973, 978 (9 Cir. th 2008) (*Camacho* II) (citation omitted).

Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of

4

fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys in general. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). See also *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990). Similar to an award of attorneys' fees in civil rights cases, an award of fees in FDCPA cases should encourage the bringing of meritorious claims which might otherwise be abandoned and ensure effective access to the judicial process. *City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (rejecting the rule of proportionality in determining and awarding attorneys' fees in § 1983 claims); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

## II.    PLAINTIFF'S REQUESTED LODESTAR IS REASONABLE

The lodestar method is used to determine the amount of reasonable attorneys' fees "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins*, 548 F.3d at 1350[1]; *see also Dikeman v. Progressive Exp. Ins. Co.*, 312 F. App'x 168, 172 (11th Cir. 2008).

"A 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, see 42 U.S.C. § 1988 (permitting court, 'in its discretion,' to award fees), but the

---

[1] As stated in *Bivins*, those 12 factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Bivins*, 548 F.3d at 1350 n.2 (citing *Johnson,* 488 F.2d at 717-19).

judge's discretion is not unlimited." *Perdue v. Kenny*, 559 U.S. 542, 554 130 S.Ct. 1662, 1673 (2010) "[W]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours [spent] are reasonable, the [lodestar calculation] is presumed to be the reasonable fee contemplated" by a statute. *Blum*, 465 U.S. at 897.

The amount becomes the "lodestar" that can then be adjusted upwards or downwards, again using the *Johnson* factors. *Hensley*, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. "Although the 'lodestar' method effectively replaced the *Johnson* balancing test previously employed in the Eleventh Circuit, courts still consider the twelve factors left over from the balancing test in determining the lodestar amount." *Zachloul v. Fair Debt Collections and Outsourcing*, 2010 WL 1730789, at *1 (M.D. Fla. 2010).

One of the first steps in any lodestar analysis is for the court to determine the reasonable hourly rates of counsel. To this end, Class Counsel submits six pieces of evidence to support the requested hourly rate of $500 for each of the three experienced class action lawyers representing the class in this matter. First, the contemporaneous time records of the Plaintiff's attorneys are submitted. Exhibit A. Second, the Declaration of Brian W. Warwick details the experience of the lawyers at Varnell & Warwick, PA. (Exhibit B). The firm is relatively unique in that if focuses almost exclusively on consumer class actions and other types of complex consumer litigation. Id. at ¶ 2. It has been appointed to act as Class Counsel in more than 45 class actions during the firm's 18 years in existence. Id. at ¶ 11. The firm also has extensive appellate experience on class action and other complex matters in numerous state and federal courts of appeal. Id. at ¶ 15. In fact, the firm is currently litigating whether a third-party counterclaim defendant can remove a state court class action counterclaim to federal court under the Class Action Fairness Act before the Supreme Court of the United States. *Home Depot USA v.*

*Jackson*, 880 F.3d 165 (4th Cir. 2018) (Supreme Court No. 17-1471). With only four lawyers, the firm practices nationally and continues to litigate cases as far away as Alaska and California. Id. at ¶¶ 2, 6, 10. The firm has never been found not to be adequate class counsel.

Mr. Warwick has been practicing for 19 years within the area of complex consumer litigation, has acted as Lead Counsel in numerous class actions, and has been a regular speaker on class action issues for National Consumer Law Center. Id. at ¶ 8. Ms. Varnell has been practicing for 24 years in consumer law and has further contributed significantly to protecting consumers through her work with various organizations. She is the former Chairman of the Florida Consumer Protection Law Committee of the Florida Bar, and a former co-Chairman for the National Association of Consumer Advocates. Id. at ¶ 13. She currently serves on the Partner's Counsel for the National Consumer Law Center, on the Board of Directors of Public Justice. Id. at ¶ 14. Mr. Lietz has been practicing consumer law for over 27 years and is a graduate of Georgetown University Law Center. *Id.* at ¶ 15.

There are few Florida law firms with this level of commitment to consumer rights. In 2018, Mr. Warwick and Ms. Varnell were recipients of the 2018 Trial Lawyer of the Year Award from the Public Justice Foundation in Washington, D.C. The award was presented for the firm's work against the payday loan industry in the matter of *Inetianbor v. CashCall and John Paul Reddam*, United Stated District Court, Southern District of Florida, 13-60066 – CIV – COHN – Seltzer. The complex issues in that matter involved the sovereignty of companies using Indian tribes to provide internet loans at interest rates as high as 300% and defeating a sham arbitration provision. The litigation included one appeal to the Eleventh Circuit and a petition for review to the Supreme Court, and defeating a substandard national settlement in North Dakota, before ultimately being settled in conjunction with the Florida Attorney General's office.

The third and fourth pieces of evidence presented by Class Counsel are two Declarations of John Yanchunis of Morgan & Morgan's Complex Litigation Group. (Exhibits E and F). The Morgan firm needs no introduction to this Court as it is one of the largest and most successful plaintiff law firms in the United States. With more than 450 attorneys working through offices in 14 states, the firm litigates complex cases nationally, including the Middle District of Florida. *Id.* at ¶ 2.  The first Yanchunis declaration was submitted in connection with Class Counsel's initial Motion for Attorneys' Fees.  DE 138, 139, 139-2, and 141. Mr. Yanchunis reviewed the docket and the specific filings in this matter and concluded that the time spent by Class Counsel through trial was reasonable, in his experience. *Id.* at ¶16.  Specifically, Mr. Yanchunis states:

> Based upon my review of the file and other materials, and the legal and practical challenges of the case where it appeared that little quarter was given by Defendant, Class Counsel was able to achieve a very favorable result, first in seeking certification of the class, and then in the trial of the case to verdict.   For these reasons, based on my personal experiences and knowledge of this area of the practice, it is my opinion that the hourly rates of Class Counsel, $500 per hour for Ms. Varnell and Messrs. Warwick and Dietz, and $300 per hour for Steven Simmons, (if not under the market) and the amount of time expended litigating this case, 388.90 as of June 2, 2017, is very reasonable and commensurate with the results obtained.

*Id.* at ¶ 16.

Attached hereto as Exhibit F is a second declaration of John Yanchunis, one submitted in November 2018 to this Court in an FDCPA class action proposed settlement.  As both the Morgan firm and Varnell & Warwick litigate similar cases, Mr. Yanchunis is familiar with the work product produced by Class Counsel and believes "in [his] professional opinion, they are stellar lawyers who practice with the highest degree of professionalism and pursue cases they undertake with passion." *Id.* at ¶ 12.   Mr. Yanchunis also affirmed the reasonableness of the hourly rates:

It is my opinion, based upon my knowledge of the skills, experience and accomplishments of Brian W. Warwick (who has practiced for 19 years) and Janet R. Varnell (who has practice for 23 years) that their requested hourly rate of $500.00 is reasonable for lawyers of their caliber who practice in this area of litigation in this District, as well as around the Country, for an FDCPA/FCCPA class action. If anything, their rates are below what other lawyers are being awarded in similar class actions around the country and certainly within the Middle District of Florida.

Id. at ¶ 14. If the Morgan firm were to have litigated this matter, the stated hourly rate for Mr. Yanchunis would have been $950 per hour. Id. at ¶ 11.

The Declaration of James C. Hauser is the fifth piece of evidence submitted in support of the hourly rate requested by Class Counsel. (Exhibit G). Mr. Hauser is a Florida lawyer, former Circuit Court Judge, and author of "Attorney's Fees in Florida." Id. at ¶ 3-5. Mr. Hauser is a recognized expert on attorney's fees in Florida. He is a frequent lecturer before the bench, Bar and public on the subject of attorney's fees. He is a graduate of Boston University School of Law and the Wharton School of Finance at the University of Pennsylvania. While Mr. Hauser's specific analysis relates to Varnell & Warwick's work on another, similar FDCPA case, his analysis of the reasonableness of the hourly rates sought is germane to this motion Id. at pp. 4-8.

The final declaration submitted by Class Counsel in support of their hourly rate is from Ira Rheingold, Director of the National Association of Consumer Advocates ("NACA"). (Exhibit H). As the leader of a national organization comprised of the nation's best consumer lawyers, Mr. Rheingold is uniquely aware of the qualities and capabilities of the consumer protection bar. Because the reputation and experience of counsel within the community is relevant to their hourly rate, Mr. Rheingold states that, in his opinion, Varnell & Warwick are some of the "most ethical, experienced and sophisticated attorneys in the consumer protection bar." Id.

In addition to the supporting declarations, the hourly rate of $500 per hour has been deemed reasonable in a variety of different cases in the Middle District. See e.g. Collier County,

*a political subdivision of the State of Fla. v. RTG, LLC*, No. 2:17-CV-14-FTM-38CM, 2018 WL 5300200, at *6–7 (M.D. Fla. Oct. 10, 2018), report and recommendation adopted sub nom. *Collier Cty. v. RTG, LLC*, No. 2:17-CV-14-FTM- 38CM, 2018 WL 5293002 (M.D. Fla. Oct. 25, 2018) ($500 per hour reasonable in eminent domain case); *Universal Physician Servs., LLC v. Zotto*, No. 8:16-CV-1274-T-36JSS, 2017 WL 2560024, at *2 (M.D. Fla. May 24, 2017), report and recommendation adopted, No. 8:16-CV-1274-T-36JSS, 2017 WL 2538190 (M.D. Fla. June 12, 2017) ($500 per hour reasonable in business litigation); *Diperna v. GEICO Gen. Ins. Co*., No. 612CV687ORL36KRS, 2016 WL 7246094, at *4 (M.D. Fla. June 27, 2016)(reasonable hourly rate of $550.00 in bad faith insurance case); *Smith v. City of New Smyrna Beach*, No. 611CV1110ORL37KRS, 2015 WL 13738777, at *3 (M.D. Fla. Apr. 24, 2015), report and recommendation adopted sub nom 2015 WL 13738776 (M.D. Fla. May 20, 2015) ($500 Hourly Rates for Title VII sexual harassment case reasonable); ); *Lumpuy v. Scottsdale Ins. Co*., No. 8:11-CV-2455-T-24, 2015 WL 1708875, at *2 (M.D. Fla. Apr. 15, 2015) ($500 per hour is reasonable in breach of contract action); *Chawla v. Starbucks Coffee Co*., Case No. 8:10-cv-457-27AEP, at Docs. 12, 13 (M.D. Fla. Feb. 8, 2011).

Further, the *Johnson* factors also support the proposed hourly rate to Class Counsel.

## 1. The time and labor required.

As set forth in the attached detailed time records and Declarations, Class Counsel spent more than 524.50 hours on this matter, which is appropriate for a FDCPA class action that was tried to jury and then appealed.  (See Exhibit A, Contemporaneous Time Records).  There are four factors adding to the time and expense in this matter.  First, the theory on which suit was brought was relatively novel which is discussed in section 2 below.  Second, LTD filed several dispositive motions and motions for rehearing that drove up the time substantially.  Third, the

class action had to be tried to a jury, which is rare for any class action.  Fourth, Class Counsel successfully briefed and argued the case on appeal to the Eleventh Circuit.

### 2. The novelty and difficulty of the questions.

Until the Seventh Circuit's decision in *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685 (7th Cir. 2017), there was no published decision holding that a failure to warn the consumer about the potential ramifications of making partial payment on time-barred debts could violate the FDCPA.  As a result, drafting this theory into a Complaint that would withstand scrutiny without the guidance from previous litigation made this matter more difficult and time consuming than most FDCPA letter violation cases.  Further, FDCPA letter cases are often *per se* violations which can be readily determined from a simple review of the letter.  Here, the theory was based on an absence of information in the letter, which made it much more difficult to prove and riskier to litigate.  Accordingly, the lodestar should reflect that this matter took more time and required more expertise in FDCPA litigation than more traditional FDCPA cases.

### 3. The skill requisite to perform the legal services properly.

In addition to knowing and understanding the complexities of a novel FDCPA claim, this case also required counsel to know how to properly certify and try a consumer class action. Accordingly, the hourly rate that should be applied here should be consistent with other consumer class action cases litigated in this District, as opposed to individual FDCPA cases. Moreover, the skills required to try this case to a jury were also required in this action.  When the complexities of the theory, the class action component and the trial are considered, this case should be considered to be at the high end of difficultly for consumer protection type cases.

In addition to needing class action litigation skills and trial lawyer skills, bringing this case to a final successful conclusion also required Class Counsel to utilize their appellate

advocacy skills.   Appellate advocacy requires yet another set of skills, as evidenced by the commonly known fact that there are many dedicated appellate practice groups with the American Lawyer Top 100 law firms, and many more boutique appellate law firms.

### 4. The preclusion of other employment.

The time spent on this case was not, and could not be, spent at the same time on other matters. Through the time of the appellate oral argument, the law firm of Varnell & Warwick, PA only employed three lawyers.  Obviously, the hours reflect that at times all three lawyers were working exclusively on this matter.  With such a relatively small firm, there are substantial opportunity costs in preparing the necessary documentation and briefing to present a federal class action case to the Court.  The time expended on Plaintiff's behalf by Class Counsel was time which would have been spent on other matters had this case not been filed or litigated extensively. It is impossible for Plaintiff's counsel to determine what other cases may have been precluded due to their representation of Ms. Baez and the class, but it is clear that the hours spent on this case would have been expended on other matters.

### 5. The customary fee for like work in the community.

Class Counsel's time and rates are well within the range of similar work.  First, the declarations submitted in support of this motion and the case law cited show that the hourly rates sought are reasonable.  Class Counsel also shows this Court the "United States Consumer Law Attorney Fee Survey Report 2015-2016."  (Exhibit I).  This report is the only one of its kind, and has been used in more than 35 jurisdictions, including state and federal courts, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates, resulting in more than $7.9 million in awards across the United States.

In *Santarlas v. Steube*, 8:15-CV-01311, 2017 US. Dist. Lexis 383 (M.D. Fla. 2017), Judge Whittemore approved the use of the Consumer Law Report when approving prevailing party attorney fees in an individual claim under the Driver's Privacy Protection Act, 18 USC § 2724.

> The reasonableness of the hourly rates is further supported by the United States Consumer Law Attorney Fee Survey Report 2013-2014 conducted by Ronald L. Burdge, Esq. reflecting average hourly rates for attorneys practicing consumer law in Tampa, Florida range from $363/hour to $475/hour for attorneys with 16-25 years in practice (Dkt. 46-8). See also *Renninger v. Phillips & Cohen Assocs.*, No. 8:10-CV-5-T-33EAJ, 2010 U.S. Dist. LEXIS 92736, 2010 WL 3259417, at *2 (M.D. Fla. Aug. 18, 2010) (considering a consumer law attorney fee survey to determine prevailing market rate).

*Id*. Cf. *Raimondi v. Zakheim & Lavrar, P.A.*, 2012 WL 1382255, at *6 (M.D.Fla. 2012) (rejecting 2010 version of Report).

According to the Florida portion of the Survey, the following rates apply to the lawyers and this case: Median Rate for Attorneys Handling Class Action Consumer cases in Florida generally is $475. That hourly rate increases with experience, as the "Average Hourly Rate for lawyers with 16-20 years of experience" is $525. (Consumer Survey Florida Results at 53-54).

By Region – Tampa (Middle District) is $500 per hour for class action lawyers and $456 for 16-20 years of experience, and $455 for lawyers with 21-25 years of experience (Consumer Survey for Tampa Region Page 209-210). Rates for consumer class action lawyers in Orlando charge a median rate of $500, and an Average Hourly rate of $467 for lawyers with 16-20 years of experience and $494 for lawyers with 21-25 years of experience. (Consumer Survey, Orlando rates page 212-213). Because this case was litigated in Orlando, these rates are most applicable and are an additional basis for the hourly rates requested by Class Counsel here.

**6. Whether the fee is fixed or contingent.**

As in most FDCPA cases, the attorney fee at issue here is completely contingent -- not on the amount of damages, but on an award by the court or agreement of the opponent.  Here Class Counsel litigated this matter contingent on its success. This is probably the most important *Johnson* factor for this Court to consider. As Justice Brennan observed in his *Blum* concurrence:

> Indeed, allowing district courts to award such upward adjustments is entirely consistent with the market-based approach to hourly rates that is today reaffirmed by the Court. Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, irrespective of whether they win or lose.

*Blum*, 465 U.S. at 903, 104 S.Ct. at 1551.

The fact that the FDCPA includes an attorney fee provision indicates that Congress recognized that consumers would be unable to afford to pay their counsel to represent them and that such actions should be taken on a contingency fee basis. Class Counsel's decision to take this case on a contingency basis further supports the hourly rates and attorney fee they have requested because the slightly higher rate requested compensates them for the substantial risk of not getting paid at all. It is also worth noting that no payment can be made until the conclusion of the case. This matter has been pending for going on 4 years, since 2015.

Fairly compensating attorneys in class actions is important because absent class actions, most individual claimants would lack the resources to litigate, as individual recoveries are often too small to justify the burden and expense of litigation. *In re Telectronics Pacing Systems, Inc*., 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling ... claimants to pool their claims and resources" to "achieve a result they could not obtain alone."). Further, it is not sufficient to just

14

be paid the same hourly rate that a paying customer would pay because it does not take into account either the risk or the time delay.

In *Johnson*, the Fifth Circuit recognized that fees should be sufficient "to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition ...." *Johnson*, 488 F.2d at 719--20. The court observed that "[a]dequate compensation [for successful counsel in contingent cases] is necessary... to enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession." *Id.* The Fourth Circuit also recognized the importance of the contingent nature of fees in consumer cases. "As an initial matter, contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation. Sadly, a plaintiff sometimes has little to offer a lawyer other than his personal plight." *In re Abrams & Abrams*, 605 F.3d 238, 245 (4th Cir. 2010). If hourly rates awarded by the Court are unfairly reduced for such work, then lawyers are likely to seek other work which provides for less risk at higher hourly rates. If that happens, then the purposes underlying the FDCPA will be thwarted.

Paying class counsel without regard for the contingency risk will eventually lead to the end of contingency fee cases. As the Southern District of Florida has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988).

Plaintiff's counsel willingly provided services to Ms. Baez whether she won or lost her case and whether or not they ultimately got paid for their work. While this *Johnson* factor

provides no basis here for any substantial change in the lodestar, it provides ample support for approval of hourly rates at the higher end of fair market rate continuum.

### 7. Time limitations imposed by the client or the circumstances.

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and the constraints of practice. Ms. Baez is required by Fed.R.Civ.P. 54(d) to file her motion for attorney's fees within 14 days of judgment, and to submit a *Johnson*/*Bivins* factors review as required by the Eleventh Circuit in order to obtain the costs and fees award to which she is entitled under 15 U.S.C. § 1692k(a)(3).

### 8. The amount involved and the results obtained.

When determining lodestar within the Eleventh Circuit, the relief obtained should be compared to the relief sought in the complaint. The trial court can then adjust the fee based upon the results obtained. "If the plaintiff obtained 'excellent results,' his attorney should be fully compensated for all time reasonably expended on the litigation." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578–79 (C.A.11 (Ga.),1987). "However, if the plaintiff obtained only 'partial or limited success,' the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief." *Id*. That decision rests in the discretion of the district court." *Id*. An attorney's fee award should not be reduced based on the amount of damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561 574, 578, 106 S.Ct 2686, 2696, 91 L.Ed.2d 466 (1986).

In *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967 (4th Cir. 1987), the Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorney's fees to be awarded in a Fair Credit Reporting Act case. In rejecting an argument by the defendant urging proportionality to the amount recovered, the court stated:

> Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA.  Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Id.* at 974. This Court has rejected proportionality for the same reasons in FDCPA cases.  See,

*Renninger v. Phillips & Cohen Associates, Ltd.*, 2010 WL 3259417, at *3 (M.D. Fla.,2010)

Here, Class Counsel received the most that it could possibly be awarded under the FDCPA.  First, the Complaint asserted that Sections 1692(e)(2)(A), (10), and 1692(f).  (Doc. 1, Complaint at 44-46).  The jury found all three sections of the FDCPA were violated by LTD.  (Doc. 123, Verdict Form).  In addition, the jury awarded the statutory maximum to Plaintiff Baez individually and to the class pursuant to Section 1692(f)(A) and (B).  Where the jury awards the maximum amount that the statute will allow and finds all three sections of the FDCPA to have been violated, the results obtained must be considered to be exceptional.

### 9. The experience, reputation and ability of the attorneys.

Plaintiff and the Class were represented by four attorneys in this case from the law firm of Varnell & Warwick, P.A.; Janet R. Varnell, Brian W. Warwick, Steven T. Simmons, Jr. and David Lietz.  Karen Stroly is a paralegal at the firm who also spent time on this matter.   The background and experience of these attorneys justifies rates ranging between $300 and $500 per hour.  As Class Counsel shows above in its discussion of its reasonable hourly rates, the lawyers of Varnell & Warwick are some of the "most ethical, experienced and sophisticated attorneys in the consumer protection bar." Rheingold Declaration, Exhibit H.  The accolades bestowed upon these attorneys, including the 2018 Public Justice Trial Lawyer of the Year award, is further evidence that Varnell & Warwick has an unparalleled reputation in the field of consumer protection law.

**10. The undesirability of the case.**

Taking on debt collectors like LTD who are systematically seeking to take advantage of people by collecting on time barred debts where the dunning letters are misleading but not necessarily on the face of the document is not "desirable."  Further, the prospect of taking on such litigation and incurring the cost of issuing notice to the class and having to wait for several years before getting paid also makes the case less desirable.

In addition, this case has been rendered completely undesirable by recent communication from LTD and its counsel, apprising Plaintiff's counsel that LTD does not have the funds to pay either the class judgment or the attorneys' fees and costs. See 1/21/19 Email from LTD Counsel, Exhibit J.  Despite apparently having a net worth of over $5 million at the time of trial, LTD now contends that it is too broke to pay Ms. Baez, too broke to pay the Class, and too broke to pay Plaintiff's counsel.  Getting Ms. Baez and the Class paid is now going to require extensive collection action, which is inherently undesirable.

**11. The nature and length of the professional relationship with the client.**

Class Counsel was retained particularly for pursuit of this claim in federal court on specialized consumer protection law issues.   Their employment was sought because of their legal abilities and reputation in this area of the law, and in class action litigation in particular. However, this *Johnson* factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are transactional, and not ongoing, matters.

**12. Awards in similar cases.**

Attached as Exhibit K is a chart of similar cases in which courts (including many Florida courts) have recently approved attorney fee awards for Class Counsel within the past three years.

In each case, the trial court approved a class action settlement that included an attorney fee award to Varnell & Warwick at hourly rates at or above $450 per hour in cases involving consumer protection violations under various fee shifting statutes.  (See Exhibit L, Compilation of Orders Approving Rates in the above cases.)

Furthermore, Courts within the Middle District of Florida have been awarding hourly rates at or near $400 per hour in basic FDCPA or other non-complex cases since at least 2009. *Stone v. Nat'l Enterprise Sys.*, No. 6:08–cv–1523–Orl–22GJK, 2009 WL 3336073, at \*2, 5 (M.D.Fla. Oct.15, 2009) ($394.00 per hour reasonable for attorney with fifteen years of experience); *Cook v. Law Offices of Forster & Garbus*, 2010 WL 4941439, at \*3 (M.D.Fla.,2010) (citing Stone and its rate of $394).  Last month, a Florida state court found $400 per hour to be reasonable for a plaintiff's attorney in an individual FCCPA debt collection case that ended in settlement:

> Having reviewed the evidence presented, the Court finds that the hourly rate for attorney N. James Turner of $400 per hour is reasonable under the factors set forth in Florida Rule of Professional Conduct 4-1.5(b)(l)(A)-(H), Florida Patient's Compensation Fund v. Rowe, 472 So. 2d I 145 (Fla. I 985), and Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).

*Garner v. Frontier Communications Corporate Services, Inc*., Case No. 2017-SC-12908-O, County Court for the Ninth Judicial Circuit in and for Orange County, Florida (November 13, 2018) (order attached hereto as Exhibit M). Notably, the *Garner* case was brought on behalf of individuals, and was not a class action, making it far less complex than this case.

"Judges within this District have approved hourly rates ranging from $275.00 to $394.00 per hour as reasonable for attorneys with more than fifteen years' experience in FDCPA cases." *Tacoronte v. Cohen*, 2014 WL 5473567, at \*4 (M.D.Fla.,2014), citing *Cook v. Law Offices of Forster & Garbus,* No. 6:10–cv–934–Orl–28KRS, 2010 WL 4941439, at \*3 (M.D.Fla. Nov.3,

2010) (citing authority within the District).  In *Diperna v. Geico General Ins. Co.*, Case No. 6:12–cv–687–Orl–36KRS, Doc. 204, *report and recommendation adopted in part and rejected in part by* 2016 WL 4158553 (M.D. Fla. Aug. 4, 2016), where the court set the hourly rate for counsel with 21 years' experience at $400 per hour, counsel with 7 and 10 years' experience at $225 per hour, and a paralegal at $100 per hour).  However, none of these cases were class actions that were tried to a jury.  In fact, Class Counsel can find no FDCPA class action that was tried to a jury where attorney fees were awarded by the Court.  Normally such cases are settled.

In the 2010 case of *Hepsen v. J.C. Christensen & Assocs., Inc*., 394 F. App'x 597, 599 (11th Cir. 2010), the Eleventh Circuit affirmed an hourly rate of $300 per hour for an individual FDCPA case. This case is almost 9 years old and was an individual action not a class action. See also *Titus v. Commercial Recovery Sys., Inc*., No. 8:13-cv-00567-T-27AEP, 2014 WL 55016 at *4 (M.D. Fla. Jan. 7, 2014) ($350 per hour a reasonable hourly rate for FDCPA default judgment individual case). In 2017, this same $350 per hour rate was approved in *Hering v. Halsted Fin. Servs., LLC*, No. 8:17-CV-1439-T-33MAP, 2017 WL 4355626, at *6 (M.D. Fla. Oct. 2, 2017). However, that case was before the Court on default judgment where the defendant failed to answer and it was not a class action. There is no more simple set of facts in an FDCPA case than that.

Similarly, the Orlando Division of this Court noted that hourly rates of $350 per hour had been approved in this judicial district for "straight forward" non-class FDCPA and FCCPA cases:

> This was a straight forward FDCPA and FCCPA case. A review of similar cases throughout this District reveals that courts award between $100.00 and $350.00 per hour for attorneys and between $95.00 and $100.00 per hour for paralegals.

*Alston v. Summit Receivables*, No. 617CV1723ORL31DCI, 2018 WL 3448595, at *10 (M.D. Fla. June 27, 2018), report and recommendation adopted, No. 617CV1723ORL31DCI, 2018 WL 3436789 (M.D. Fla. July 17, 2018). Again, the motion before the court that warranted $350 per hour in *Alston* was a simple motion for default judgment. Plaintiff's counsel in that case had only to file a complaint, perfect service and file for default when no answer was filed. This case is not remotely analogous to the *Alston* case.

The closest case to this one is *North Star Capital Acquisitions v. Krig*, 2011 WL 65662 at *6 (M.D. Fla. Jacksonville Division January 10, 2011), because it involved a debt collection letter class action. However, that case involved a collection letter that was sent with a summons and offered to stipulate to an offer of judgment to avoid having to go to court. The case turned on the interpretation of the letter on its face. Despite the simple nature of the case, this Court approved an hourly rate of $350 per hour nearly 8 years ago. This case was far more complex, went to trial, and then on to appeal.  Just because the prior cases involved the FDCPA does not mean that the hourly rate provided therein should be applied across the board to all FDCPA cases, not all of which are *sui generis*.  Determining attorney fees through such a method fails to appropriately take into account the *Johnson* factors which are to be considered under each individual case. When looking at "similar" FDCPA cases, the cases cited above should be viewed as a jumping off point, due to the significantly more complex nature of this FDCPA case.

Also, apropos of Class Counsel's point that appellate work is its own special animal, the Circuit Court, Fourth Judicial Circuit in and for Duval County, Florida recently approved appellate rates at $800 per hour. *Michelle Botchey v. Daniel Rombola and Maria Hernandez*, 2012 WL 7809963 (Fla.Cir.Ct.). (See Exhibit J, Order Granting Plaintiff's Motion for Awarding of Attorneys' Fees and Costs Pursuant to Proposal for Settlement).

Class Counsel is asking for a modest increase from the $400 awarded in FDCPA cases nearly a decade ago to $500 in this case, because the case required class certification, a full jury trial on the merits, and a federal court appeal.  Moreover, it is not unreasonable to increase the rates over time to accommodate for normal inflation.  If a rate of $400 per hour was "reasonable" in 2010, lawyers practicing within the Orlando area are subject to the normal increases in expenses just like everyone else.  To cap their hourly rate at $400 per hour simply because that was the rate approved in the past would punish Class Counsel by locking them into 8 or 9-year-old rates.

Accordingly, the lodestar calculation for the award of attorney's fees to Class Counsel in this matter for the time expended by all counsel of record totals $253,650.00 in attorney fees, and should be approved by this Court.

### III.   CLASS COUNSELS' COSTS ARE REASONABLE AND SHOULD BE AWARDED

In addition to the attorney's fees set forth above, Class Counsel also seeks reimbursement of $23,042.22 in litigation costs under 28 USCA §.   (See Exhibit N, Bill of Costs with Supporting Documents).  Class Counsel's recoverable costs are listed in detail for this Court's review.  The largest expense in this case was sending notice to the class.  Dahl Administration issued Notice at a cost to Class Counsel of $16,890.24.  *Id.*  The Supreme Court has stated that "The usual rule is that a plaintiff must **initially** bear the cost of notice to the class.  *Eisen v. Carlisle and Jacquelin*, 94 S.Ct. 2140, 2153, 417 U.S. 156, 178 (U.S.N.Y. 1974) (emphasis added).  By inclusion of the word "initially," the Court inherently recognized that such costs are indeed recoverable by a successful class action Plaintiff.

Additionally, Class Counsel had to travel to Texas for the depositions of LTD's Corporate Representatives. However, these costs are not recoverable under § 1920, but are listed to inform the Court of additional case expenses that were incurred but not recouped.

For the reasons set forth herein, Class Counsels' Costs of $23,042.22 should be awarded by this Court. Class Counsel will incur additional time and expense in order complete the resolution of this case, including but not limited to distribution of their pro-rata share of the Judgment to the Class. Such additional time and expenses are compensable. See Haitian *Refugee Center v. Meese*, 791 F.2d 1489, 1500-01 (11th Cir. 1986).

## IV.   INCENTIVE AWARD TO PLAINTIFF BAEZ

Plaintiff also requests a class representative incentive award for Liznelia Baez of $2,500.00. Plaintiff proposes that this incentive award be paid out of the common fund of statutory damages ($49,361.29), before it is awarded to the class. This incentive fee award is reasonable, given Ms. Baez's contributions to this case.

This Court has previously articulated the legal standards under which requests for incentive awards are evaluated. *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-CV-59-ORL-40KRS, 2016 WL 2348704 (M.D. Fla. May 4, 2016). As this Court noted, incentive awards are frequently approved in class actions where the plaintiff was extensively involved in discovery and litigation activities, and are also regularly approved where the plaintiff achieved substantial benefits for the class. *Palmer*, 2016 WL 2348704, at *9. In *Palmer*, this Court favorably cited *Good v. Nationwide Credit, Inc.*, No. 14-4295, 2016 WL 929368, at *14–15 & n.5 (E.D. Pa. Mar. 14, 2016), a case where an incentive award for each plaintiff in FDCPA case was approved. *Good* is similar to this case, in that the results achieved were the maximum amount allowed by statute.

Moreover, unlike *Palmer* where the proposed settlement and incentive award was rejected by this Court, achieving a verdict that finds LTD's collection letters to be deceptive and misleading has the practical effect of enjoining LTD and all other debt collectors from sending such letters to Florida consumers in the future (or to do so at grave risk of being successfully sued for so doing).  In *Palmer*, the proposed settlement that was rejected allowed "Defendants to continue using the dunning letters which Plaintiff alleges violates the FDCPA. *Palmer,* 2016 WL 2348704, at *10.  That is the exact opposite of this case, where Ms. Baez's verdict on behalf of the class establishes a bright line in the sand that debt collectors can only cross at their peril. This is a significant victory for Florida consumers, achieved through Ms. Baez's efforts.

The decision of a sister court in the Southern District of Florida in *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185 (S.D. Fla. 2006) is particularly instructive here, because it was also a class action case that was litigated to judgment, rather than being settled.  As such, there is not the same risk of collusion between the class representative and class counsel that the court must guard against in assessing the propriety of an incentive award.  "However, the need for structural safeguards against collusion does not apply to cases like this one that have been litigated to judgment. There is no uncertainty about whether the Class Representatives in this case sought the maximum recovery for the class." *Allapattah*, 454 F. Supp. 2d at 1219–20.

*Allapattah* is also instructive because it was a case where the incentive award was requested after the case was tried to verdict, where no incentive award had been previously requested.  Despite Defendants' "pre-objection" to this incentive award (lodged as a part of its objection to Plaintiff's Proposed Final Judgment), this is indisputably appropriate.  Federal appellate courts have confirmed that incentive awards are typically sought after verdict.

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) ("Awards are generally sought after a settlement or verdict has been achieved").

The case cited by LTD, *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007), in entirely inapposite.  *Pinto* was a class action settlement, not a verdict.  Thus, the notice could contain the total amount of the settlement, the attorneys' fees and costs requested, and the proposed incentive awards.  LTD is comparing apples to oranges in its objection.

Liznelia Baez played a substantial role in this litigation. This is not a case where lawyers inappropriately recruit a plaintiff to serve as a "figurehead" for a lawsuit the lawyers themselves want to file and settle. In contrast, Ms. Baez's brought LTD's conduct to the attention of the lawyers, and she fully participated in the case by working closely with counsel.  She spent hours discussing the case with her lawyers, reviewed her files for documents, had to endure being deposed, had to be prepared for her trial testimony, and had to testify at trial.   She had to be reminded of her own temporary financial difficulties, and had to bear being characterized as a person who doesn't pay her debts.

Additional reasons support the case for compensating Ms. Baez here. Because this case was tried (and Ms. Baez came to court for trial on two consecutive weeks), and not initially settled, Ms. Baez proved her fidelity to the Class over the course of this fiercely-defended litigation. It must be noted that Ms. Baez had to work overnight on the night prior to the trial, and got virtually no sleep prior to trial.  She had to endure the questions of family and friends as to why she was serving as the class representative in a case that on its face didn't appear to provide her with any great benefit.  Yet, she persisted, took this case to trial, and won on behalf of over 34,000 Floridians.  As the Southern District wrote in *Allapattah*:

> The interests of the Class, such as here, are better served when they are presented
> by vigilant, competent and independent class representatives who actively monitor

> class counsel and the conduct of the litigation. Moreover, where lawyers are rewarded for their risk and efforts on behalf of a class, but class representatives are not, there is little incentive for class representatives to serve as active client participants in the litigation, thus negating the "adequate representation" safeguard of Rule 23 and transferring all decision-making responsibility to counsel.

*Allapattah*, 454 F. Supp. 2d at 1221–22.  As a result, the modest incentive award of $2,500.00 is fully justified, under the facts and circumstances of this case.

## V.   CONCLUSION

The Court should grant the instant motion, and award Attorney Fees of $253,650.00, costs of $23,042.22; and an Incentive Award to Ms. Baez of $2,500.00.

### CERTIFICATE OF COUNSEL

Pursuant to Local Rule 3.01(g), Counsel for Plaintiff has conferred with Counsel for Defendant regarding this motion. Counsel for Defendant states they oppose the relief sought in this motion.

DATED:  JANUARY 21, 2019        **VARNELL & WARWICK, P.A.**

/s/ Brian W. Warwick
BRIAN W. WARWICK, FBN:  0605573
JANET R. VARNELL, FBN:  0071072
DAVID K. LIETZ (ADMITTED PRO HAC VICE)
P.O. Box 1870
Lady Lake, Florida 32158
Telephone: (325) 753-8600
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
dlietz@varnellandwarwick.com
kstroly@varnellandwarwick.com

**Michael Tierney, P.A.**
Michael Tierney, FBN: 643475
918 Beard Avenue
Winter Park, Florida 32789
Telephone:  (407) 740-0074
Michael@tierneylaw.us

*Attorneys for Plaintiff and the Class*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send a notice of electronic filing to the following:

**GOLDEN SCAZ GAGAIN, PLLC**
DALE T. GOLDEN, ESQ.
201 North Armenia Avenue
Tampa, Florida 33609-2303

Counsel for Defendant

<u>/s/ Brian W. Warwick</u>
    **Brian W. Warwick**