**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LIZNELIA BAEZ,

        Plaintiff,

v.                                                                        Case No:  6:15-cv-1043-Orl-40TBS

LTD FINANCIAL SERVICES, L.P.,

        Defendant.
_____/

## ORDER

This cause comes before the Court on the following:

1. Plaintiff's Renewed Motion for Attorneys' Fees, Costs, and Incentive Award (Doc. 173 (the "**Motion**"));

2. Defendant's Response in Opposition (Doc. 179);

3. Magistrate Judge Thomas B. Smith's Report & Recommendation (Doc. 181 ("**R&R**"));

4. Plaintiff's Objections to Magistrate's R&R (Doc. 183); and

5. Defendant's Response to Plaintiff's Objections (Doc. 189).

With briefing complete, the matter is ripe.

**I.     BACKGROUND**

In June 2015, Plaintiff initiated this FDCPA class action suit against Defendant. (Doc. 1). The class was certified, and, after substantial motion practice, the case was tried to a jury in May 2017. (Docs. 106, 119). Plaintiff prevailed at trial, with the jury awarding $1,000.00 in statutory damages and $49,361.29 to the class. (Doc. 134). Defendant

appealed and Plaintiff's verdict was affirmed. (Docs. 162, 171, 172). Thereafter, Plaintiff timely filed the Motion. (Doc. 173).

Plaintiff seeks $253,650.00 in attorneys' fees and $23,042.22 in costs. (*Id.*). Plaintiff also requests a $2,500.00 class representative incentive award. (*Id.*). Attached to the Motion are timesheets, declarations from class counsel, declarations from individuals familiar with similar fee determinations, the U.S. Consumer Law Attorney Fee Survey Report, several cases, and a list of costs and supporting invoices. (Docs. 173-1 through 173-14).

The R&R recommended that the Motion be granted in part and denied in part. (Doc. 181). Specifically, the R&R recommended reducing the number of hours and hourly rate sought by Plaintiff's Counsel. (*Id.*). The R&R also recommended denying Plaintiff's request for costs, instead urging costs be pursued via a bill of costs. (*Id.*). Finally, the R&R recommended granting the incentive award, which Defendants did not oppose. (*Id.*). Plaintiff's Counsel lodged numerous objections to the R&R.

## II.     STANDARD OF REVIEW

### A.     Review of Report & Recommendation

When a magistrate judge has been designated to decide a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying proposed findings of fact and the recommended disposition. Fed. R. Civ. P. 72(b)(1). Any party who disagrees with the magistrate judge's decision has fourteen days from the date of the decision to seek the district judge's review by filing objections to those specific portions of the decision with which the party disagrees. Fed. R. Civ. P. 72(b)(2). The district judge must then make a *de novo* determination of each issue to which objection

is made. Fed. R. Civ. P. 72(b)(3). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (per curiam). The district judge may then accept, reject, or modify the magistrate judge's recommendation, receive additional evidence or briefing from the parties, or return the matter to the magistrate judge for further review. Fed. R. Civ. P. 72(b)(3).

### B. Attorneys' Fees Determinations

The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553-54 (2010).

### III. DISCUSSION

Plaintiff presented the following information regarding the time her Counsel worked on this case and their requested hourly rates:

| Attorney/Paralegal | Hours | Rate | Lodestar |
|---|---|---|---|
| Brian W. Warwick, Esq. | 199.50 | $500 | $99,750.00 |
| Janet R. Varnell, Esq. | 120 | $500 | $60,000.00 |
| David K. Lietz, Esq. | 165.60 | $500 | $82,800.00 |
| Steven Simmons, Jr., Esq. | 34.60 | $500 | $10,380.00 |
| Karen Stroly, Paralegal | 4.8 | $150 | $720.00 |

| TOTAL | 524.50 | | $253,650.00 |
|---|---|---|---|

(Doc. 173). Defendant argued that both the hours claimed, and rate requested by Plaintiff, were excessive and the Magistrate agreed. The R&R therefore recommended cutting 175.9 partner hours and setting the reasonable rate figure at $400 per hour as to the partners (Warwick, Varnell, and Lietz), and $150 per hour as to the associate (Simmons). (Doc. 181). Plaintiff objected to the Magistrate's recommendations. (Doc. 183).

The Magistrate aptly described the attorneys' bona fides:

> The supporting declarations establish that the firm of Varnell & Warwick focuses almost exclusively on consumer class actions and litigation (Doc. 173-2). Mr. Warwick has been practicing for 19 years within the area of complex consumer litigation and has acted as lead counsel in numerous class actions. Ms. Varnell has been practicing for 24 years in consumer law and has served on several prestigious consumer law committees and boards. Mr. Lietz is of counsel with the firm, has been practicing law for 27 years and has "been lead counsel in bench and jury civil trials in both state and federal courts across the country for over 25 years." (Doc. 173-4). There is no information provided as to Mr. Simmons's experience or qualifications, other than that he was employed by the firm in the earlier stages of the case (Doc. 173-2). Also absent is information with respect to Ms. Stroly. Still, as she has not performed any services in the case before this Court, I do not discuss whether her rate is reasonable.

(Doc. 181, pp. 10–11).

### A. Reasonable Hourly Rate

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience

concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value"); see *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[1] "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

Turning to the present case, the Court agrees with the Magistrate's observation that the "time and labor required, the novelty and difficulty of the questions, and the skill required to perform the legal service properly are all factors that support a rate on the higher end." (Doc. 181, p. 11). This class action involved a novel legal theory and was fiercely litigated by the parties. These factors militate in favor of a high-end fee. The preclusion of other employment also weighs in Plaintiff's favor because significant time was required to litigate this matter through the pre-trial stages, at trial before a jury, and then on appeal. Moreover, the amount involved, results obtained, and the experience, reputation, and ability of the attorneys weigh in favor of a high-range fee award. Plaintiff

---

[1] The Johnson factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

succeeded at trial and appeal, and Plaintiff's counsel have shown they are experienced and successful consumer class action lawyers.

Another important consideration supporting a higher-end fee is the fact that Plaintiff's Counsel's fee was contingent. Indeed, Congress and the courts recognize that lawyers working for a contingent fee are entitled to "upward [fee] adjustments to compensate for the contingent nature of success, and thus for the risk of nonpayment in a particular case." *Blum v. Stenson*, 465 U.S. 886, 903 (1984) (Brennan, J., concurring).

The client-imposed time restriction factor is neutral, as is the professional relationship with the client. Likewise, the undesirability of the case is mixed. The availability of statutory attorneys' fees to successful plaintiffs' counsel undermines the undesirability argument. On the other hand, Plaintiff proffers that "Defendant is now apparently broke," therefore this case is undesirable. Plaintiff's contention of Defendant's financial condition is supported by a single email from defense counsel proffering that Defendant has "no ability" to pay the damages award, let alone attorneys' fees. (Doc. 173-10). This paltry evidence is insufficient to allow the Court to make any conclusions as to Defendant's financial condition. What's more, it is unclear whether a defendant going "broke" post-appeal renders a case undesirable. The *Johnson* decision's discussion of the undesirability factor guides the Court's analysis:

> *The "undesirability" of the case*. Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant. Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court.

*Johnson*, 488 F.2d at 719 (citation omitted). In describing this factor, the court in *Johnson* wasn't concerned with a defendant's ability to pay statutory fees, but with the reputational

damage suffered by civil rights attorneys taking on controversial civil rights cases. Thus, Plaintiff has not shown that this factor supports an elevated hourly fee.

Finally, the Court must consider the fees customary to lawyers in the community and awards from past cases. The Magistrate identified several recent FDCPA cases where plaintiff's counsel was awarded a $350 per hour fee—but the only similarity between this case and those is prosecution under the FDCPA. (Doc. 181, p. 13). Two of the identified cases were resolved on a default judgment, and another was settled.[2] While not totally unhelpful, these cases are at best marginally similar to the determination at hand. Also unhelpful is the U.S. Consumer Law Attorney Fee Report submitted by Plaintiff. *See Alston*, 2018 WL 3448595, at *10 (collecting cases).

This was not a straightforward FDCPA case. It was fiercely litigated pre-trial, before a jury, and on appeal, and involved novel legal theories. It required, and was sustained by, competent attorneys with vast experience in the consumer law context. Therefore, based on the *Johnson* factors and the Court's own experience, *Norman*, 836 F.2d at 1299-1300, 1303, the Court finds an hourly rate of $450 to be reasonable for Warwick, Varnell, and Lietz.

As noted above, Plaintiff initially neglected to provide evidence of Simmons' background or experience. The Magistrate therefore "treated him as a newly minted associate or paralegal and suggest[ed] a rate of $150 an hour." (Doc. 181, p. 13). In the

---

[2]   *Alston v. Summit Receivables*, No. 6:17-CV-1723ORL31DCI, 2018 WL 3448595, at *10 (M.D. Fla. June 27, 2018), *report and recommendation adopted*, 2018 WL 3436789 (M.D. Fla. July 17, 2018); *Prindle v. Carrington Mort. Servs., LLC*, No. 3:13-cv-1349-J-34PDB (M.D. Fla. Dec. 1, 2017); *Lietz v. Oxford Law, LLC*, 8:15-CV-2211-T-23TGW, 2016 WL 2897469, at *3 (M.D. Fla. Apr. 22, 2016), *report and recommendation adopted*, 2016 WL 2787099 (M.D. Fla. May 13, 2016).

Objection, Plaintiff concedes that it was a "mere oversight" that Mr. Simmons' background was not included, and the Objection lays out Mr. Simmons' experience. (Doc. 183, pp. 4–5). However, unsworn arguments contained in a legal brief do not satisfy the quantum of evidence required to substantiate fee requests. *See Norman*, 836 F.2d at 1299, 1303. However, the Court is cognizant that experience and background is but one factor to be considered among twelve and is not dispositive. That is to say that Simmons' attorney fee is impacted by some of the factors that benefited his colleagues—namely, time and labor required, the novelty and difficulty of the questions, the skill required, the results obtained, and the contingency-fee agreement. These factors surely warrant a fee for Simmons exceeding a fee awarded to a newly minted attorney in a simple FDCPA case. Accordingly, the Court finds $250.00 to be a reasonable hourly rate for Simmons.

### B. Number of Hours Reasonably Expended

As noted above, Plaintiff seeks 524.5 hours split among four attorneys and one paralegal. (Doc. 173). Warwick submitted a declaration averring that he personally reviewed the time entries and "struck repetitive or excessive time equating to approximately 20% of the overall time recorded in this matter." (Doc. 173-2). Even so, the Magistrate found this request excessive, the case overstaffed, and recommended substantial reductions. (Doc. 181). Plaintiff objects to those reductions. (Doc. 183).

#### 1. Hours Expended on Appeal

Though Defendant did not initially oppose Plaintiff's request for attorneys' fees incurred litigating the appeal (Doc. 179), the Magistrate unilaterally reviewed them, and recommended they be disallowed unless Plaintiff can "establish[] the authority of this Court to award fees for services in another court . . . ." (Doc. 181, pp. 9–10). The

Magistrate's finding was predicated on 11th Cir. Rule 39-2, which sets the time for filing a motion for appellate attorneys' fees at fourteen days after the appeal concludes and prescribes a protocol for transferring attorneys' fees determinations to the district court. (*Id.* at p. 9 n.2). The rule states:

> 11th Cir. R. 39-2 Attorney's Fees
>
> (a) <u>Time for Filing</u>. Except as otherwise provided herein or by statute or court order, **an application for attorney's fees must be filed with the clerk within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later**. For purposes of this rule, the term "attorney's fees" includes fees and expenses authorized by statute, but excludes damages and costs sought pursuant to FRAP 38, costs taxed pursuant to FRAP 39, and sanctions sought pursuant to 11th Cir. R. 27-4.
>
> . . .
>
> (d) <u>Motion to Transfer</u>. Any party who is or may be eligible for attorney's fees on appeal may, within the time for filing an application provided by this rule, file a motion to transfer consideration of attorney's fees on appeal to the district court or administrative agency from which the appeal was taken.

Noting that Plaintiff did not apply for attorneys' fees or move to transfer such an application under 11th Cir. Rule 39-2, the Magistrate found that Plaintiff had not established that this Court had jurisdiction to award appellate fees. (Doc. 181, pp. 9–10). Plaintiff objects. (Doc. 183).

The Eleventh Circuit expounded on Rule 39-2 in *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009). "It is long established in this circuit that this court has the discretion to award attorney's fees and costs for the work expended before it." *Id.* at 1357 (quoting *Mills by Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir.1997) (per curiam)). "A district court is 'not authorized, by local rule or otherwise, to control the filing time or assessment of attorney's fees for services rendered on appeal.' If a party wishes

9

to obtain fees on appeal, he or she must file a petition with the clerk of this circuit within fourteen days of the issuance of the opinion of this court." *Id.* (quoting *Davidson v. City of Avon Park*, 848 F.2d 172, 173 (11th Cir. 1985)). Therefore, 11th Cir. Rule 39-2 "governs an award of attorney's fees and requires, absent statute or court order, the filing of a request" with the Eleventh Circuit. *Id.* at 1356–57.

Plaintiff submits that Rule 39-2 does not divest this Court of jurisdiction over awarding appellate attorneys' fees, that the Eleventh Circuit could not make the threshold determination of whether Plaintiff was a prevailing party and therefore entitled to fees, and they are owed fees under 15 U.S.C. § 1692k.

These arguments, however, fail to persuade the Court how 11th Cir. Rule 39-2 does not operate to bar Plaintiff's pending claim for attorneys' fees. The rule plainly states that an application for attorneys' fees "must" be filed with the Eleventh Circuit clerk, "[e]xcept as provided by statute or court order." 11th Cir. R. 39-2(a). Plaintiff did not make such an application, nor does she identify a statute or court order exempting her from this requirement. To be sure, district courts regularly invoke this rule to preclude recovery of appellate fees absent compliance with the rule. *See In re Consolidated Non-Filing Ins. Fee Lit.*, No. 2:96–md–1130–MEF, 2012 WL 1366733, at *3 (N.D. Ala. Apr. 19, 2012) (finding that district court was without jurisdiction to award appellate fees where movant did not request attorneys' fees with the Eleventh Circuit); *Sure Fill & Seal, Inc. v. GFF, Inc.*, No. 8:08–CV–882–T–17TGW, 2012 WL 5227676, at *7–8 (M.D. Fla. Apr. 2, 2012) (same); *cf. Young Apartments, Inc. v. Town of Jupiter*, No. 05-CV-80765, RYSKAMP/VITUNAC, 2011 WL 13173808, at *2 n.2 (finding that district court possessed jurisdiction to award appellate fees where fee-seeking litigant filed a motion with Eleventh

Circuit "to transfer consideration of attorneys' fees on appeal to the district court" pursuant to 11th Cir. R. 39-2(d)). Accordingly, the Court agrees with the Magistrate that Plaintiff has not demonstrated entitlement to appellate fees, and will thus **disallow 4.80 hours of paralegal hours**,[3] and **77.6 hours of partner time**.

### 2. Reduction for Conferences With Co-Counsel

In its opposition to Plaintiff's motion for attorneys' fees, Defendant identified 31.4 hours spent by Plaintiff's counsel conferencing with each other. (Doc. 179, pp. 9–13). Defendant supported its contention that these hours are not compensable by citing the declaration of Ernest H. Kohlmyer, III, an experienced consumer law attorney, which states: "there is rarely a need for more than a single experienced attorney to prosecute cases through trial and the instant matter does not present *any unique legal* or factual issues that would require multiple attorneys for prosecution." (Doc. 153-1, p. 6). Kohlmyer's opinion implicitly maintains that this case—a class action involving a novel legal theory in this Circuit—can be litigated in the same manner as a run-of-the-mill single-plaintiff FDCPA case. The Court is skeptical of this assertion. The Magistrate, however, agreed and reduced 18 partner level hours for time spent conferencing with co-counsel, drafting a *pro hac vice* motion, and reviewing the case file. (Doc. 181, p. 7).

The Court finds that this reduction was error. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 838 F.2d at 1302. Accordingly, the Court will overrule the reduction in hours for conferences with co-counsel.

---

[3] The only hours claimed on behalf of Ms. Stroly were in connection with the appeal.

Case 6:15-cv-01043-PGB-TBS   Document 199   Filed 05/23/19   Page 12 of 15 PageID 4053

*3.     Reductions for Varnell's and Lietz's Trial Time*

Defendant also objects to the substantial time billed by Varnell and Lietz at trial and travelling. (Doc. 179, pp. 13–14, 17–18). Varnell submits a claim for 29 hours preparing for and attending trial; Lietz claims 50 hours. The Magistrate described Varnell's involvement as being limited to conducting Plaintiff's direct examination and reading deposition testimony. (Doc. 181, pp. 7–8). Lietz, on the other hand, gave Plaintiff's opening statement and read deposition testimony with Varnell. (*Id.* at p. 8). The Magistrate found both attorneys' time claims excessive and recommended reducing them by fifty percent. (*Id.*).

The Court finds the Magistrate's fifty percent reduction was improper. The number of hours claimed by Varnell and Lietz is not unreasonable, and the work each performed at trial is not as narrow as construed by Defendant or the Magistrate. Litigating a jury trial takes many hours of preparation, and an attorney need not be actively speaking at trial to be contributing. Accordingly, the Court overrules the reduction of Varnell's and Lietz's travel time, finding those hours were reasonably expended.

*4.     Reductions for Travel Time*

Defendant also objected to the hours claimed by Defendant for travel. (Doc. 179, pp. 13–14). Plaintiff sought 53.8 hours of billable time for travel to and from hearings, depositions, and mediation. The Magistrate found 25 hours "to be reasonable for necessary travel, resulting in a reduction of 28.8 hours of partner time." (Doc. 181, p. 8). Plaintiff objects.

Plaintiff correctly points out that, between the reductions for Varnell's and Lietz's trial time and their travel time, the Magistrate effected impermissible double deductions.

This resulted in a recommendation that Lietz recover 5.5 of the 50.5 hours he spent preparing for, travelling to, and participating in trial. The Court finds a less drastic reduction appropriate. "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). Travel time is compensable. "Courts in the Middle District have taken varying approaches to awarding fees for travel time. Some have deducted the time where able local counsel was available, some have awarded it, and others have reduced the number of recoverable hours." *Martinez v. Hernando Cty. Sheriff's Off.*, No. 8:12–cv–666–T–27TGW, 2013 WL 6047020, at *3 (M.D. Fla. Nov. 13, 2013) (collecting cases). In its discretion, the Court will reduce travel hours by ten percent, resulting in a **5.4-hour reduction of partner time**.

This case was more difficult than the average FDCPA case, and required experienced attorneys, which Plaintiff engaged. There is no requirement that plaintiffs retain counsel located within the city limits of the courthouse, therefore the bulk of the time spent travelling by Plaintiff's lawyers were reasonable. *See Dowdell*, 698 F.2d at 1192.

### 5. Agreed Reductions

The Magistrate also recommended reducing **2.5 hours of partner time** spent seeking deadline extensions, **7 hours of partner time** for deposition designations, and **2.5 hours of partner time** (attributed to Warwick) travelling to Orlando to become familiar with courtroom technology before trial. (Doc. 181, pp. 8–9). Plaintiff does not object to the

recommended twelve-hour partner time reduction. Upon review, the Magistrate did not commit clear error in recommending these reductions, which the Court now adopts.

### C.     Lodestar Calculation

In light of the foregoing, the Court calculates the lodestar as follows:

| | | |
|---|---|---|
| Partner time: | 390.1 hours x $450 = | $175,545.00 |
| Associate: | 34.6 hours x $250 = | $8,650.00 |
| TOTAL: | | $184,195.00 |

### D.     Costs

Plaintiff seeks reimbursement of $23,042.22 in litigation costs. (Doc. 173, p. 22). Included in that number is $16,890.24 of costs incurred in issuing notice to the class. (*Id.*; Doc. 173-14). The Magistrate recommended this request be denied and that Plaintiff "seek recovery by filing a Bill of Costs to be taxed by the Clerk in the usual course." (Doc 181, p. 14). Plaintiff concedes that a Bill of Costs may be appropriate as to many of the costs requested, but objects to this procedure as to the $16,890.24 costs being recovered in this manner. (Doc. 183, p. 16). Plaintiff avers that "the cost of [n]otice to the [c]lass . . . is a matter outside" the Clerk's purview and must be awarded by a district court acting in its discretion. (*Id.*). Defendant did not address the costs issues in its response to Plaintiff's objections. (Doc. 189).

Plaintiff directs the Court to *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137 (9th Cir. 2009), which followed other district courts that "placed notice costs on the class action defendant once the defendant's liability has been established." *Id.* at 1143 (collecting cases). The Court agrees that it may, in its discretion, award costs of providing

14

notice to the class where Plaintiff has shown success on the merits. Accordingly, the Court will tax costs of $16,890.24 against Defendant.

E.  **Incentive Award**

The R&R also recommended the named Plaintiff be awarded a $2,500.00 incentive award. (Doc. 181). This incentive, however, was already awarded in the Court's May 3, 2019, Order (Doc. 198, ¶ 3), so it is denied here as moot.

IV.  **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Renewed Motion for Attorneys' Fees, Costs, and Incentive Award (Doc. 173) is **GRANTED IN PART** and **DENIED IN PART**.
2. The Report & Recommendation (Doc. 181) is **ADOPTED IN PART** and **REVERSED IN PART**.
3. Plaintiff's Objections to Magistrate's R&R (Doc. 183) are **SUSTAINED IN PART** and **OVERRULED IN PART**.
4. Plaintiff is awarded $184,195.00 in attorneys' fees. The Clerk is **DIRECTED** to enter judgment awarding Plaintiff Liznelia Baez attorneys' fees as set forth above.
5. The Clerk is **DIRECTED** to tax costs in the amount of $16,890.24.

**DONE AND ORDERED** in Orlando, Florida on May 23, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record